GABRIEL MALAFRONTE ET AL. *v.* PLANNING AND ZONING BOARD OF THE CITY OF MILFORD ET AL.

KING, C. J., ALCORN, HOUSE, COTTER and THIM, Js.

Argued April 6—decided June 8, 1967

*Pasquale Young,* with whom, on the brief, were *Robert I. Berdon* and *David D. Berdon,* for the appellants (plaintiffs).

*Robert Kapusta,* with whom, on the brief, was *Dennis F. Harrigan,* for the appellee (named defendant); with him also, on the brief, was *George J. Jaser,* for the appellee (defendant Milford housing authority).

COTTER, J.  The plaintiffs have appealed from a judgment of the Court of Common Pleas sustaining the actions of the named defendant, hereinafter referred to as the board,[1] in unanimously granting the petitions of the Milford housing authority, which is also a defendant in this action, for (1) a change of zone of a certain parcel of land from an R-10 to an R-MF classification, to allow its use for a public housing project, and (2) a special permit, under chapter 4, § 13, of the Milford zoning regulations (1961, as amended), authorizing the proposed project on the property in question.  A separate, full public hearing was held by the board, in regard

---

[1] Although the named defendant is designated a "board" in Milford, usually such a body authorized to enact zoning regulations, as this one is, has been legally designated a "commission."  See General Statutes §§ 8-1, 8-4a; *Sullivan* v. *Town Council,* 143 Conn. 280, 288, 289, 121 A.2d 630; *Kuehne* v. *Town Council,* 136 Conn. 452, 457, 72 A.2d 474.

to each petition, on July 13, 1965. Earlier the same evening, a public hearing was held on the board's own proposal to amend the plan of development of the parcel in question from medium-density residence to high-density residence. This change in the plan of development was approved unanimously at an executive meeting.

Under the Milford zoning regulations, an R-10 classification is a medium-density zone permitting one-family dwelling units on a minimum lot of 12,500 square feet with a minimum frontage of 100 feet, while R-MF is a residential zone in which multifamily dwellings are allowed by special permit on a minimum lot of 20,000 square feet with a minimum frontage of 100 feet and a density of not less than 2500 square feet per family unit.

The property in question is approximately 4.58 acres of undeveloped land bounded on the east by Harrison Avenue, on the south by Stone Street, and on the other two sides by lots of private property owners. The property is within 370 feet of a partially completed urban renewal project which includes neighborhood businesses and other high-density uses. There is an existing business zone to the west, and another high-density residential area is across the street. A great many of the neighboring properties are nonconforming to the R-10 zone because their lots do not meet the 12,500 square feet density limitation. The houses on a number of these properties are quite closely spaced, as a result of which there is a higher actual density for the area than is provided for under the R-10 classification.

## I

When enacting or amending its regulations, a local zoning authority acts in a legislative capacity.

It must therefore be free to modify its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. *Pierrepont* v. *Zoning Commission,* 154 Conn. 463, 468, 226 A.2d 659; *Young* v. *Town Planning & Zoning Commission,* 151 Conn. 235, 243, 196 A.2d 427. A legislative body is not necessarily bound by the rule which prohibits administrative boards, such as a zoning board of appeals, from reversing earlier decisions without a change in circumstances. *Young* v. *Town Planning & Zoning Commission,* supra; *Corsino* v. *Grover,* 148 Conn. 299, 310, 170 A.2d 267; see 1 Yokley, Zoning Law and Practice (3d Ed.) § 7-3. The discretion of a legislative body, because of its constituted role as a formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. Thus, although we have said that a zoning commission should not ordinarily alter the classification of a certain area in the absence of changed conditions, it is clear that this rule, which is a restriction on the principle of legislative discretion, will only be applied in those rare instances where the zoning amendment is patently arbitrary. A less strict rule would require the court to exercise a legislative judgment. See *Andrew C. Petersen, Inc.* v. *Town Plan & Zoning Commission,* 154 Conn. 638, 642, 228 A.2d 126; *Pierrepont* v. *Zoning Commission,* supra; *Winslow* v. *Zoning Board,* 143 Conn. 381, 390, 122 A.2d 789.

Zoning must be sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. *Luery* v. *Zoning Board,* 150 Conn. 136, 145, 187 A.2d 247; *Clark* v. *Town*

*Council,* 145 Conn. 476, 483, 144 A.2d 327. The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission. Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion.

The property in the instant case was zoned R-10 by the board in 1960, having previously been included in a zone allowing one-family dwellings on lots of 7500 square feet. The change to R-MF, which is the subject of the present appeal, took place on July 14, 1965. One of the reasons given by the board was an increased need for housing to accommodate families being displaced by the urban renewal project, which extends to within 370 feet of the site in question. There was evidence before the board that the renewal project was already in progress at the time of the public hearing and that the taking of land for this project had begun about a year earlier. The impact of the renewal program, which had not yet been felt when the subject property was previously rezoned in 1960, was not limited in its scope to the immediate area of the actual condemnation. The new conditions created by the project affected the surrounding area and entitled the board, under its broad legislative powers, to revise the zonal classification of the property in question.

## II

It is also urged by the plaintiffs that the action of the board constituted spot zoning. "To constitute spot zoning, in the sense of an illegal exercise of power on the part of the zoning authority, a change

of zone must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole. . . . If the change is in accordance with the comprehensive plan and the predominating purpose in making the change is to benefit the community as a whole rather than the owner of the land, the action of the commission is not unreasonable or arbitrary and does not constitute spot zoning, although the owner may receive an incidental benefit." *DeMeo* v. *Zoning Commission,* 148 Conn. 68, 73, 74, 167 A.2d 454; see 1 Rathkopf, Law of Zoning and Planning, c. 26. The evidence before the board was to the effect that much of the surrounding area was devoted to one-family residences on nonconforming lots ranging from 3500 square feet to 6300 square feet, even though the rezoning of 1960 restricted new construction to lots of 12,500 square feet. The amendment of July, 1965, allowing multifamily dwellings of not more than three stories and a density of not less than 2500 square feet per family unit, does not encroach on the residential character of the area. The fact that the board, on the same evening, granted a special permit for a two-story, forty-five unit development, with a per family density of approximately 4500 square feet, and the thorough consideration which it gave to the proposed project at the public hearings, and in its executive sessions, indicate an intention on the part of the board to authorize multifamily housing which would not be out of harmony with the surrounding area. In considering the existing uses in the neighborhood, the needs and growth of the town, and the desire to provide for the best interests of all the community in the foreseeable future, the board demonstrated that it carefully thought out its decision in amending the

zonal classification. Under all these circumstances, it cannot be said that the action of the board constituted spot zoning or was inconsistent with the town's comprehensive plan. See *Miss Porter's School, Inc.* v. *Town Plan & Zoning Commission,* 151 Conn. 425, 430, 198 A.2d 707; *Zandri* v. *Zoning Commission,* 150 Conn. 646, 649, 192 A.2d 876.

## III

The plaintiffs urge two further points as grounds for reversal. The first is that the board was influenced, not by sound principles of zoning, but rather by a moral obligation to provide housing for families being displaced by the redevelopment project. It is apparent that this change of zone was designed to dovetail with the city's redevelopment and public housing programs. The board's expressed reasons include a desire to "promote the health and general welfare of the whole community by providing a site to adequately house residents of the urban renewal area." This does not necessarily indicate that the action of the board was tainted with illegality. The purpose of zoning is to serve the interests of the community as a whole, and one of those interests is to provide adequate housing. A change of zone predicated on such an interest, if otherwise consistent with the accepted principles of zoning, is a reasonable exercise of the board's discretionary powers. When a new zoning regulation has a real or reasonable relation to the general welfare, health, morals, or safety of the community, an auxiliary motivation will not render the change in classification nugatory. *Stoner McCray System* v. *Des Moines,* 247 Iowa 1313, 1319, 78 N.W.2d 843; 58 Am. Jur. 957, Zoning, § 27. There was considerable evidence that a different classification was

justified by the character of the neighborhood surrounding the property in question and its adaptability to the needs of the community. The plaintiffs have not shown that the board abused its powers in this case. *Zandri* v. *Zoning Commission,* supra, 650.

Finally, the plaintiffs claim that the board disregarded a section of the zoning regulations which requires that special permits be based on a finding that the specific permitted use will not be hazardous, inconvenient or detrimental to the character of the neighborhood. Milford Zoning Regs., c. 4 § 13(B)(1) (1961, as amended). The minutes of the executive session, however, indicate that "the board found that the proposed use conformed to all of the requirements of the special permit regulations." It was not necessary for the board to make this finding in the exact language of the regulations. See *Couch* v. *Zoning Commission,* 141 Conn. 349, 358, 106 A.2d 173. The evening prior to its executive session, the board had conducted a five-hour public hearing on these applications, which revealed, among other things, that the proposed project had been approved, in terms of safety, by both the fire department and the police department. The schematic drawings presented to the board in furtherance of the award of the special permit indicate a careful consideration of the development of the property in question. Unusual safeguards were imposed by the regulations and the vote of the board which afforded reasonable, "ample protection to anyone who may be immediately affected by a particular application." *Summ* v. *Zoning Commission,* 150 Conn. 79, 82, 83, 88, 186 A.2d 160. The board was careful to provide that utilities, sewers, landscaping, parking, building-site location, traffic

safety, and screening be adequate and available to promote the best interests of the town.[2] The finding of the board and the record on which it is based were sufficient to satisfy the prerequisites of the zoning regulations.

There is no error.

In this opinion the other judges concurred.

---

[2] Some of the conditions, and stipulations attached to the special permit were obviously advisory, but those of controlling importance were enforceable by the board. Milford Zoning Regs., c. 4 § 13 (D) (1961, as amended).