[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal challenging the refusal of the defendant Simsbury Zoning Commission to amend the Zoning Regulations of the Town of Simsbury. As proposed by the plaintiffs, the amendment would have changed the definition of floodplain contained in the zoning regulations, thereby allowing the plaintiffs to make greater use of their property than is presently allowed under the existing, but more restrictive definition of floodplain. CT Page 5088
The following facts form the basis of this appeal. Andrew Yakemore, one of the plaintiffs in this action, owns various parcels of land abutting the Farmington River in the Town of Simsbury. The other plaintiff, Aero Space Industries, Inc., also owns a parcel of property abutting the Farmington River. On this property is an historic mill. Both of the plaintiffs properties are within the floodplain area as defined by the Simsbury Zoning Regulations, and as such, are subject to use limitations.
On February 11, 1994, the plaintiffs applied to the Simsbury Zoning Commission to amend the Zoning Regulations of the Town of Simsbury. Specifically, the plaintiffs sought to change the definition of the Floodplain Zone in Simsbury as referenced in Article Seven, Section M of the Simsbury Zoning Regulations. Part 5 of Section M defines the Floodplain as "all the land adjacent to the Farmington River which falls below the 160 contour line." Under this definition, all property, including the plaintiffs', that is located below the 160 contour line (referring to a fixed elevation 160 feet above sea level) is deemed to be within the Floodplain, and therefore subject to the use limitations set forth in the applicable provisions of the Simsbury Zoning Regulations. Conversely, any property located above the 160 contour line is not within the Floodplain and therefore not subject to the limitations imposed on plaintiffs' property.
Plaintiffs' application proposed a new definition of floodplain. That definition would incorporate by reference the 100-year flood line ("FEMA Line") as shown on national flood insurance maps. Unlike the 160 contour line, which represents a fixed point above sea level, the FEMA line's relationship to sea level is variable. If adopted by the Town, the limits of the floodplain would range from 147 to 163 feet above sea level. As such, the plaintiffs' properties would not fall within the floodplain.
Prior to the public hearing before the Zoning Commission, plaintiffs' application was referred to several agencies and commissions. The Simbsury Conservation Commission and Inland Wetlands and Watercourses Agency voted to recommend adoption of plaintiffs' proposed definition. The Simsbury Planning Commission recommended that the line identifying the floodplain be revised, but that the exact location be determined only after consultation with appropriate professional staff. CT Page 5089
During the hearing before the Zoning Commission the plaintiffs presented extensive evidence in support of their application. A principal focus of their presentation was the arbitrary nature of the 160 foot contour as the definition of the Floodplain. In support of this claim the plaintiffs offered the testimony of the former Town Planner and former Chairman of the Zoning Commission both of whom testified to the arbitrary nature of the 160 contour line and to their belief that when it was adopted as the Floodplain definition it was intended to be a temporary definition. The plaintiffs also presented the testimony of a licensed professional engineer who identified the location of the plaintiffs' properties with respect to the 160 foot contour line and the FEMA line.
The Zoning Commission also received evidence in opposition to the plaintiffs' application. That evidence suggested: (1) that neither the 160 contour nor the FEMA line were appropriate definitions of the Floodplain; (2) that protection of the River's ecosystem was as an important concern as flood management and that adoption of the FEMA line implicated those concerns; (3) the FEMA line is as imperfect a definition as the 160 line; and (4) that the complex questions raised by the plaintiffs' applications required further professional and expert review.
Following the close of the hearing the Commission met to discuss the application and render its decision. Members of the Commission agreed that the limit of the floodplain is an important question that warrants serious review. They counselled, however, that the decision on that issue should not be made in the context of an application by interested parties such as the plaintiffs who would directly benefit from a change in definition. Accordingly, plaintiffs' application to amend the definition of floodplain was unanimously denied. The following reasons were cited as the basis for the denial. First, the lack of objective data to evaluate the alternatives for the definition and location of the floodplain. Second, the importance of including other town agencies in the process of redefining the floodplain. Finally, the Commission noted the need for more engineering data to evaluate the plaintiff's proposal.
The plaintiffs now appeal the decision of the Zoning Commission denying their application to amend the definition of floodplain. They argue that the defendants erred by (1) ignoring the Simsbury's Plan of Development objective of modifying the Floodplain Zone in Simsbury; (2) ignoring the expert testimony of CT Page 5090 their licensed professional engineer; (3) and failing to conclude that the 160 contour line is arbitrary and unreasonable.
I. AGGRIEVEMENT
Proof of classical aggrievement requires that plaintiffs satisfy a two-part test. First, the plaintiffs must demonstrate that they have a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest shared by all members of the community. Second, the plaintiffs must establish that their personal and legal interest has been specially and injuriously affected by the decision.Walls v. Planning Zoning Commission, 176 Conn. 475, 477-78
(1979).
In this matter the plaintiffs are the record owner of properties located on the banks of the Farmington River. Their properties are deemed to be within the Floodplain as defined by the Town of Simsbury Zoning Regulations. Consequently, their use of the properties is limited in accordance with the applicable regulations. Had their application to amend the Zoning Regulations been approved, the plaintiffs would have been able to put their properties to a higher and better use. The plaintiffs are aggrieved by the denial of their application. Id.
II. SCOPE OF REVIEW
The standard for review of a zoning commission's refusal to amend its regulations is well established. When a local zoning commission considers amendments to the zoning regulations it acts in a legislative capacity. In this capacity the commission is vested with broad discretion. D J Quarry Products, Inc. v.Planning Zoning Commission, 217 Conn. 447, 450 (1991). "In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Calandro v. Zoning Commission,176 Conn. 439, 440 (1979).
"The discretion of a legislative body, because of its constituted role as a formulator of public policy, is much CT Page 5091 broader than that of an administrative board, which serves a quasi-judicial function." Malafronte v. Planning Zoning Board,155 Conn. 205, 209 (1967). This legislative discretion is "wide and liberal" and must not be disturbed by the courts "unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally." Burnham v. Planning ZoningCommission, 189 Conn. 261, 266 (1983). "Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or an abuse of discretion." Malafrontev. Planning and Zoning Board, supra, 209-10.
Finally, "[w]here a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." Id.
III. DISCUSSION
In this matter the plaintiffs argue that the defendant Commission failed to consider the Town of Simsbury Plan of Development, as required by General Statutes § 8-2, which provides, in relevant part, that regulations adopted by a zoning commission "shall be made in accordance with a comprehensive plan and in adopting such regulations the commission shall consider the plan of development prepared under section 8-23. (emphasis supplied). Specifically, Policy 7 of the Simsbury Plan of Development states:
 Encourage land uses compatible with the conservation of the Farmington River and its floodplain, recognizing the unique natural, aesthetic, and recreational attributes of the river.
 OBJECTIVE A: Modify the Floodplain Zone in the Simsbury Zoning Regulations and the Zoning Map to be coincidental with the Federal Emergency Management Agency (FEMA) Flood Maps, 100 year Flood Zone.
The plaintiffs' allege that in denying their application the defendant Commission did not "consider" Policy 7 of the Simsbury Plan of Development. The plaintiffs also suggest that the above Policy imposed a mandatory obligation on the Zoning Commission to adopt the FEMA line as the floodplain definition. CT Page 5092
A review of the record does not support the plaintiffs' claim that the Zoning Commission failed to "consider" the Simsbury Plan of Development. Plaintiffs and their witnesses pointed out to the Commission on numerous occasions that an objective of the Plan of Development was the adoption of the FEMA, line. Much of the plaintiffs' presentation was devoted to an explanation of the FEMA line and the effect of its adoption. During the Commission's discussion of the plaintiffs' application specific reference was made to the FEMA line, and more significantly, to the 1983 Planning Commission's suggestion that the location of the floodplain is an issue that "should be addressed". (R/R G-4, p. 26). While it is true that in its statement of reasons denying the plaintiffs' application the Commission did not specifically reference the 1983 Plan of Development, the record, considered as a whole, provides a substantial basis for concluding that the Commission was aware of and considered 1983 Plan of Development.
Furthermore, as the defendants note, General Statutes § 8-3a(b) requires that when a municipality, such as Simsbury, has separate planning and zoning commissions, a proposed change in zoning regulations must be referred to the planning commission. The planning commission, in turn, must file a "[r]eport [that] shall contain the findings of the planning commission on consistency of a proposed regulation or boundaries or changes thereof with the plan of development of the municipality and any other recommendations the planning commission deems relevant."
The Planning Commission complied with § 8-3a. Its report, filed with the Zoning Commission, did not recommend that the plaintiffs' application be granted. Instead, it suggested that any modification to the Floodplain be made only after a professional review and analysis. The Zoning Commission was fully aware of and considered the Planning Commission's report. In short, the record amply supports the conclusion that both the Planning and Zoning Commissions discharged their obligations to "consider" the Simsbury Plan of Development.
Finally, the plaintiffs suggest that even if the Zoning Commission considered the Plan of Development, it was also required to adopt Objective 7, suggesting that the FEMA line be employed as the measure of the floodplain. Unless otherwise indicated, words in a statute or regulation are to be understood according to their plain meaning. West Hartford Interfaith v.CT Page 5093Town Council, 228 Conn. 498 (1994). The plaintiffs have not suggested any reason for concluding that "consider" should not be given its usual and customary meaning, which, according to Webster's Ninth New Collegiate Dictionary is "to think about carefully"; "to take into account"; "to reflect or deliberate". The defendant's review of the plaintiffs' application fully satisfied the Commission's obligation to consider the FEMA line.
The plaintiffs next argue that the defendant violated the rule of Feinson v. Conservation Commission, 180 Conn. 421 (1980) by refusing to approve the plaintiffs' application despite the uncontroverted testimony of plaintiffs' expert engineer. In that case, the Court ruled that "a lay commission acts without substantial evidence, and arbitrarily, when it relies on its own knowledge and experience concerning technically complex issues such as pollution control, in disregard of contrary expert testimony, without affording a timely opportunity for rebuttal of its point of view." Id., 429.
In Feinson, the Newtown Conservation Commission denied the plaintiff's application on the basis of a lay member's opinion that there "was an extreme possibility of septic failure, constituting a public health hazard, with the introduction of septic effluent into surface waters." This opinion was in disregard of plaintiff's expert's testimony. The folly perceived by the Court was the failure of the Commission "to reveal publicly its special knowledge and experience, to give notice of the material facts that are critical to its decision, so that a person adversely affected thereby has an opportunity for rebuttal." Id., 428-29.
In this matter the plaintiffs' expert engineer presented uncontroverted testimony concerning the location of the proposed FEMA line, comparing that line and the location of plaintiffs' properties with the 160 foot contour floodplain definition utilized in the zoning regulations. The plaintiffs argue that because the expert's testimony was unchallenged the Commission was required to accept it. Rejection of the application, the plaintiffs assert, constitutes a violation of Feinson.
Feinson is not applicable to the present case. While it is true that the expert's placement of the FEMA line was unchallenged, the basis of the defendant's rejection of plaintiffs' application did not rest on the Commission's determination of the location of the FEMA line, but rather on its CT Page 5094 conclusion that it would be inappropriate, without further expert evaluation and testimony, to modify the definition of floodplain. A review of the Commission discussion does not disclose that its decision was based on its own evaluation of the location of the FEMA line. Nor does it appear that the Commission took issue with the plaintiff's expert testimony. Indeed, it appears the Commission accepted the expert's testimony. It nevertheless rejected the application, not because the location of the FEMA line was in question, but because it could not conclude that it was reasonable to adopt any other definition of the floodplain, including that proposed by the plaintiffs. Under these circumstances, the concerns raised in Feinson are not implicated.
Finally, the plaintiffs argue that the existing definition of floodplain — the 160 foot contour — is arbitrary and irrational as is the defendant's refusal to amend the definition in accordance with the plaintiff's recommendation. In support of their argument the plaintiffs point to the testimony of former city officials who describe the 160 foot contour as "arbitrary" and acknowledge that it was so understood at the time it was adopted. The plaintiffs further argue that the arbitrary nature of the 160 foot contour is demonstrated by the fact that if the FEMA line were adopted, their properties would be without the floodplain.
The plaintiffs' argument proves too much. The drawing of lines is always arbitrary, in that inevitably there will be those on one side of the line who want to be on the other. The issue in this appeal, however, is not whether the 160 foot contour is arbitrary, but rather whether the defendant's refusal to amend its regulations, in light of the evidence before it, was arbitrary or irrational. As previously noted, the defendant considered not only plaintiffs' presentation, but the report of the Planning Commission and other concerned citizens and experts who urged the defendant to proceed cautiously and deliberately before it approved any change to the floodplain definition. The Commission was advised that any changes it adopted would have implications far beyond the immediate concerns of the plaintiffs, including environmental, public safety and health issues. The legislative judgment of the Commission is entitled to substantial deference. Malafronte v. Planning Zoning Board, supra. This court cannot conclude, based on its review of the record, that the defendant acted arbitrarily or illegally in denying the plaintiff's application. CT Page 5095
Accordingly, the plaintiffs' appeal is dismissed.
SO ORDERED.
Robert L. Holzberg, J.