[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
1. FACTS
This is an appeal by the plaintiff from a decision of the Zoning Board of the City of Stamford (the "Board") approving an amendment to that city's zoning regulations.
From a review of the pleadings, the record on appeal and the trial of this matter, this court finds the following facts. The defendant Zoning Board of the City of Stamford is the agency empowered under the Stamford charter to amend zoning regulations. On or about December 19, 1995, the defendants Marriott Senior Living Services, Inc., ("Marriott") and Susan A. Santagata (sometimes collectively referred to as the "Applicant") filed an application for a text change of the Stamford zoning regulations with the Stamford Zoning Board.
The application essentially proposed to amend the zoning regulations by modifying Article II, Section 3 Definition No. 92.1 entitled "Senior Housing and Nursing Home Facility Complex." The applicant's proposal endeavored to include "assisted living residence" within said definition and to permit said use as a special exception in the R-10 and R-20 zones conditioned upon Zoning Board review and approval. The application also contained several modifications to setbacklines and bulk standards. At the time of the application's submission, Marriott had an interest in certain properties on Long Ridge and Roxbury Road in Stamford, located in an R-20, R-D zone.
Pursuant to the zoning regulations, the Board submitted the application to the city's Planning Board for referral comments. On January 21, 1996, the Planning Board unanimously recommended approval of the application. On February 5, 1996, the Zoning Board held a public hearing on the application. No representative for the plaintiff spoke on the record at the public hearing, nor were any comments on the application submitted by the plaintiff to the Board on or before the hearing. Following the hearing, the CT Page 3096 Board unanimously voted to approve the application. The decision was duly published, and this appeal timely followed.
II. DISCUSSION
A. Aggrievement
A person must be aggrieved in order to have standing to bring an administrative appeal. Cole v. Planning and Zoning Commission,30 Conn. App. 511, 515 (1993). At least one plaintiff must establish aggrievement for the court to have subject matter jurisdiction over the appeal. Nowicki v. Planning and ZoningBoard, 148 Conn. 492, 495 (1961).
In its complaint, paragraph 11(A), the plaintiff claims that it is aggrieved in that "it is the owner of a facility known as Westfield Court, located at 77 Third Street, Stamford, Connecticut. This facility falls within the definition set forth in Article II, Section 3.(A), Number 92.1. As the owner of land affected by the decision of the Board, the plaintiff is statutorily aggrieved pursuant to C.G.S. § 8-8 (a)(1)". At trial, the plaintiff established that, since September 12, 1991, it has been the record owner of the Westfield Court property; that said property is in an R-H zone; and that the subject amendment effects property in an R-H zone. The defendant applicant, in Section V of its brief (pages 28 through 31) argued that the plaintiff is neither statutorily nor classically aggrieved. Additionally, the defendants argue that since the plaintiff has failed to address the issue of aggrievement in its brief, the court is not bound to find aggrievement.
Based upon the evidence at trial, and the defendant's open court stipulation that the plaintiff is statutorily aggrieved, this court finds aggrievement and addresses the merits of the plaintiff's appeal.
B. Plaintiff's Arguments.
 (1) General Principles
At trial, the plaintiff reduced its objections to the zoning regulation's text amendments into three different categories: first, the text change runs against the Stamford Master Plan; second, there is no adequate definition of "assisted living"; and third, the amendment setback standards are ambiguous. The court CT Page 3097 will address each of these arguments in turn. Before doing so, however, it is useful to revisit, briefly, some general guiding principles.
The general test for judicial review of a decision to amend local zoning regulations is whether (1) the amendments conform to the town's comprehensive zoning plan, and (2) the amendments are reasonably related to the normal police power purposes set forth in C.G.S. § 8-2. Protect Hamden/North Haven from ExcessiveTraffic and Pollution, Inc. v. Planning and Zoning Commission,220 Conn. 527, 545 (1991). If there is support on the record that the Board's decision is reasonably related to at least one factor set forth in Section 8-2, the Board has acted appropriately.
Further, when a board amends its zoning regulations it is acting in a legislative capacity. Malafronte v. Planning andZoning Board, 155 Conn. 205, 208 (1967). A court reviewing a board's decision to amend its regulations must respect the legislative nature of the board's decision. Primerica v.Planning and Zoning Commission, 211 Conn. 85, 96 (1989). The board's legislative discretion should not be disturbed by the court unless it is established that the board acted illegally, arbitrarily, or in abuse of its discretion. ProtectHamden/North Haven, supra 220 Conn. at 543.
(2) The Text Change Conforms to the Comprehensive Plan,the Stamford Master Plan and C.G.S. § 8-2.
The zoning text change is consistent with and promotes the goals of the Stamford Master Plan and C.G.S. § 8-2.
"A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties." Summ v. Zoning Commission, 150 Conn. 79,87 (1962). The comprehensive plan is usually housed within the zoning regulations themselves. First Hartford Realty Corp.v. Planning and Zoning Commission, 165 Conn. 533, 542
(1973). The Zoning Board acted consistently with the comprehensive plan by embracing an amendment to an existing regulation which permits senior housing in residential districts.
Second, the amendment is consistent with the goals of the Stamford Master Plan. In the Stamford Master Plan, Category II CT Page 3098 (residential, single family, low density), it is stated that the R-20 zone is "intended to provide for and protect a suitable environment for single family dwellings and other compatible uses
(e.g. schools, churches, clubs) as may be permitted by special exception being in-general harmony with and supportive of single family neighborhoods" (emphasis added). Under the zoning regulations, a senior housing and nursing home facility complex is already permitted in an R-20 zone by special exception. The amendment modifies a permitted residential use which would be allowed by special exception. The record is replete with evidence that the text amendment is consistent with the residential character of the zone. Also, the planning board, authors of the Master Plan, unanimously recommended approval of the amendment.
Third, the amendment is compatible with the police powers of the zoning board under C.G.S. § 8-2. That section provides that the zoning regulations shall "encourage the development of housing opportunities" and "promote health and the general welfare." The statute's mandate is adequately met by the text amendment.
For all of these reasons, the text amendment is in harmony with Stamford's comprehensive and Master Plan, and C.G.S. § 8-2.
(3) There is an adequate basis for understanding of theterm "assisted living" in the text amendment.
The plaintiff next maintains, that, because the term "assisted living residence" is not defined in the application or in the zoning regulations, it is impermissibly vague and renders the amendment illegal. This court believes that the plaintiff is incorrect.
It must be recognized that the text amendment modifies a definitional section itself. Of all the terms mentioned within the definition of "senior housing and nursing home facility complex", only "nursing home" is defined in the zoning regulations. The staff report which endorsed the amendment provides a contextual backdrop for the meaning of "assisted living." The report urged that the term retain some definitional flexibility rather than being rendered inert by a precise definition within the zoning regulations.
The court believes that this is a legitimate prerogative of both the planners and the board. The cases cited by the plaintiff CT Page 3099 in its brief, for the proposition that the amendment is impermissibly vague, are inapposite. More to the point isConnecticut Health Facilities, Inc. v. Zoning Board of Appeals,29 Conn. App. 1 (1992) in which the Appellate Court held that standards applicable to a special permit application, as here, tend to be general and the reviewing agency can exercise appropriate discretion in determining whether standards have been met. The full record in this appeal provides more than adequate guidance as to the meaning of "assisted living", at least within the context of the instant application.
(4) The Amendment Setback Standards are not Ambiguous.
The plaintiff's final argument raised at trial, is that the amendment's setback standards are ambiguous. Again, this court disagrees.
The text amendment provides, in relevant part, that ". . . all buildings shall be set back from property lines a distance of no less than seventy (70) feet from all residentially used property and all street lines, thirty-five (35) feet from all other property lines . . . ." In its brief (page 13), the plaintiff argues that the Board has sole, absolute discretion to fix certain setbacks at thirty-five (35) feet, instead of the previously required seventy (70) feet from all property lines. A plain reading of the amendment indicates this argument is incorrect. The application only allows the Board to approve in its discretion the thirty-five (35) foot setbacks to property containing a non-residential use. Despite the plaintiff's claim, a "non-residential use" has a fairly fixed meaning and would not allow the Board to run haphazardly over setback requirements. Moreover, as the applicant correctly notes in its brief (page 17), even where the shorter setback may be permitted, all other requirements, (plot size, building height, building coverage and floor area ratio) must still be met. So, similarly, the plaintiff's argument that the Board has unbridled discretion must fail.
III. CONCLUSION
For all of the foregoing reasons, the plaintiff's appeal is denied.
Dated at Norwalk, Connecticut, this 20th day of March, 1997.
JOHN F. KAVANEWSKY, JR., JUDGE CT Page 3100