[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
FACTS
The defendant Leyland Development, LLC, is a contract purchaser of property owned by Maryann K. Griswold and Griswold Airport, Inc.
The parcel, once used as an airport, consists of 42.5 acres, and is located south of Route 1 in Madison, near the Hammonasett River. (ROR C.)
Portions of the property are located in three zones, R-1, R-2 (Residential) and LI (Light Industrial).
Leyland Development, LLC petitioned the Madison Planning and Zoning Commission to amend its zoning regulations, in order to permit the establishment of a Planned Adult Community on the site.
A Planned Adult Community envisions housing and associated facilities intended for and operated by persons 55 years of age and older.
All permanent residents of the community must be over 18 years of age.
The proposed amendment called for a maximum of 260 dwelling units; 140 units contained within multi-family buildings, a minimum of 70 single-family detached residences, and a minimum of 40 single-family attached residences.
The maximum coverage on the site was established at 25 percent.
Because of its proximity to Long Island Sound, the property is subject to the provisions of the Connecticut Coastal Management Act, § 22a-90
through 22a-113c of the General Statutes. CT Page 2152
Roads inside the community would be private and maintained at the expense of the unit owners.
Public hearings were held on February 15, 2001 (ROR EH), March 15, 2001 (ROR EI), and April 19, 2001 (ROR EJ).
Because a portion of the property abuts the Hammonasett River, the boundary with the Town of Clinton (ROR C), the proposal was referred to the Connecticut River Estuary Regional Planning Agency (CRERPA), pursuant to § 8-3 (b)[1] of the General Statutes.
Two letters were received from the regional planning agency (ROR I J), and one from the Town of Clinton. (ROR K.)
At the time the defendant Leyland Development, LLC filed its petition, the Madison Zoning Regulations allowed, on the airport property, by way of special permit; "Business and professional offices including accessory uses customary with and incidental to such uses, to include book storage and distribution. "[2]
The petitioner, Leyland Development, LLC, explained that approval of the proposed regulation was merely a first step in a process it hoped would culminate in the establishment of a Planned Adult Community on the Griswold Airport property.
Assuming that the commission voted a change in the regulations, a special exception and site plan application would be required, along with a Coastal Area Management (CAM) application, and the approval of the Madison inland wetlands agency. (ROR EH, p. 9.)
The amendment proposed by the developer also made approval of a permit subject to a design code to be filed with the commission by the applicant. (ROR EH, p. 9.)
The proposal attracted intense public opposition, which took the form of oral presentations, and written comments.
Objections were raised concerning the threat development posed to wildlife and open space.
Nature and conservation groups, including the Audubon Society, objected to the development, and sought to preserve the area as open space, and for a natural wildlife habitat (ROR M through ROR BL).
The Madison Land Trust also opposed the project (ROR CV), given CT Page 2153 its location near the shore, and to Hammonasett State Park.
The height of the proposed dwelling units was the subject of considerable comment.
Before voting on the proposal, the commission made several changes in the regulations as submitted.
The revised regulation provided that any violation of the age restriction mandated for a Planned Adult Community, would be deemed a material violation of the zoning regulations (§ 4.1.37.1).
A 50-foot setback around the perimeter of the property was mandated (§ 4.1.37.1.6), and not less than 19 percent of the non-tidal wetlands area must remain open space (§ 4.1.33.1.12).
On August 2, 2001, the commission voted, 5-4, to approve the amendment to its regulations, thus creating an "overlay zone" contiguous with the dimensions of the Griswold Airport property.
The commission cited 17 reasons in support of its decision. (ROR EE.)
The reasons included the minimal impact of the project on visibility, enhancement of the appearance of commercial areas on the Boston Post Road, tax base enhancement, and public policy considerations behind the concept of a Planned Adult Community. (ROR EE.)
The commission determined that the project would have minimal impact on the environment, and that it was consistent with the Madison Plan of Development.
Notice of the decision was published in The Shore Line Times on August 8, 2001. (ROR EF.)
From that decision, the plaintiffs James F. Stauton, Ellen Lowe, James A. Torres, Vita Marie T. Torres, James F. Bowe and Elizabeth Bowe, bring this appeal.
 AGGRIEVEMENT
On April 11 and April 18, 2002, The Honorable John Downey, J.T.R., held an evidentiary hearing concerning a Motion to Dismiss, filed by the defendant Leyland Development, LLC.
The defendant claimed that none of the plaintiffs could establish CT Page 2154 either classical or statutory aggrievement, and that the appeal should therefore be dismissed.
Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over the subject matter of an appeal. Winchester WoodsAssociates v. Planning Zoning Commission, 219 Conn. 303, 307
(1991).
The question of aggrievement presents an issue of fact. Hughesv. Town Planning Zoning Commission, 156 Conn. 505, 508 (1968).
An appellant's interest in property must be sustained throughout the course of an appeal. Craig v. Maher, 174 Conn. 8, 9 (1977). A plaintiff having a sufficient interest when an appeal is taken, may lose that interest by conveying the property in question. Southbury v. AmericanBuilders, Inc., 162 Conn. 633, 634 (1972).
A party claiming to be classically aggrieved by a decision appealed from, must satisfy a well-established two-fold test: 1) that party must show a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as concern of all members of the community as a whole; and 2) the party must show that the specific personal and legal interest has been specifically and injuriously affected by the decision appealed from. Cannavo Enterprises v. Burns,194 Conn. 43, 47 (1984); Hall v. Planning Commission, 181 Conn. 442, 444
(1980).
Judge Downey determined that none of the plaintiffs had demonstrated that they could satisfy the test for classical aggrievement.
Section 8-8 (1) of the General Statutes defines "aggrieved person" to include: "any person owning land that abuts, or is within 100 feet of any portion of the land involved in the decision . . ."
Judge Downy concluded that the plaintiffs James F. Stauton and Ellen Lowe, failed to satisfy the test for statutory aggrievement.
Both own property in the Town of Clinton, which is located more than 1,500 feet from the Griswold Airport property which is the subject of this appeal.
The plaintiffs James A. Torres and Vita Marie T. Torres, along with the plaintiffs James F. and Elizabeth A. Bowe, were determined by Judge Downey to be statutorily aggrieved. CT Page 2155
At trial, Vita Marie T. Torres testified that she and her husband, James A. Torres, own property at 5 Sand Gate Circle, Madison (Exhibit 1).
The property is located in the R-2 zoning district, as is a portion of the 42.5-acre Griswold Airport property. (ROR C.)
James F. Bowe testified that he and his wife, Elizabeth Bowe, reside at 1 Sand Gate Circle, Madison.
The property was acquired in 1986 (Exhibit 2), and deeded to the Elizabeth Ann Bowe Revocable Trust in 1999 (Exhibit 3).
Elizabeth and James Bowe are Trustees of the trust, which pays the property taxes. (Exhibit 4.)
Judge Downey, in his Memorandum of Decision dated June 18, 2002, found that the plaintiffs, as the owners of real property located within the R-2 zone, were statutorily aggrieved by the commission's action, in that they own property within one of the affected zones [32 Conn.L.Rptr. 394].Timber Trails Corporation v. Planning Zoning Commission,222 Conn. 374, 376 n. 3 (1992); Cole v. Planning ZoningCommission, 30 Conn. App. 511, 515 (1993).
A statutorily aggrieved party may challenge the adoption of regulations, without the necessity of proving that any injury has been sustained. Caltabiano v. Planning Zoning Commission, 211 Conn. 662,671 (1989) (Shea, J., dissenting); Lewis v. Planning ZoningCommission, 62 Conn. App. 284, 297 (2001).
It is found that the plaintiffs Vita Marie T. Torres, James A. Torres, James F. Bowe and Elizabeth Bowe are aggrieved by the decision of the Madison Planning Zoning Commission.
 STANDARD OF REVIEW
In approving amendments to § 4.1.37 of its regulations, the Madison Planning and Zoning Commission permitted the location of a Planned Adult Community on the 42.5 acre Griswold Airport property, subject to special exception approval.
This action created an "overlay zone" covering the airport parcel, because the overall zoning in the area remained unaffected. Heithaus v.Planning Zoning Commission, 258 Conn. 205, 219 (2001). CT Page 2156
The "overlay zone" concept is akin to that of a "floating zone."
A "floating zone" is a special detailed use district of undetermined location, in which the proposed kind, size and form of structures must be preapproved. Homart Development Co. v. Planning Zoning Commission,26 Conn. App. 212, 214 (1991); Robert A. Fuller, Land Use Law andPractice (second edition), § 2.2, p. 20 (1999).
What distinguishes an overlay zone from a floating zone is that a floating zone may potentially be located anywhere in a municipality, while on overlay zone is site specific.
Floating zones have been judicially sanctioned as a legitimate planning tool, which encourage flexibility. Pleasant Valley NeighborhoodAssociation v. Planning Zoning Commission, 15 Conn. App. 110, 115
(1988); Schwartz v. Town Plan Zoning Commission, 168 Conn. 20,22-23 (1975).
When determining whether to approve a floating zone application, a land use agency decides whether zone boundaries should be altered, and the action is viewed as a change of zone. Sheridan v. Planning Board, supra, 17; Homart Development Co. v. Planning Zoning Commission, supra, 215.
When a zoning commission acts to amend its regulations or to change zone boundaries, it acts in a legislative capacity, rather than in an administrative, or quasi-judicial capacity. DJ Quarry Products, Inc. v.Planning Zoning Commission, 217 Conn. 447, 450 (1991).
Notwithstanding the Heithaus decision, in which the Connecticut Supreme Court determined that the decision of the commission regarding the adoption of an historic overlay zone was administrative; Heithaus v.Planning Zoning Commission, supra, 221; all parties to this appeal agree that the defendant Madison Planning and Zoning Commission was acting in a legislative capacity when it voted to amend its regulations.
Unlike the historic overlay zone in Heithaus, where few regulations, responsibilities or controls existed after the property was given historic designation, Heithaus v. Planning Zoning Commission,supra, 215; the overlay zone established by the defendant commission is specifically subject to the special permit process, and site plan review.
In approving the amendment, the Madison Planning and Zoning Commission adopted the regulations, and simultaneously applied them to a particular 42.5-acre parcel. CT Page 2157
Acting in a legislative capacity, where it has broad discretion, the commission is free to amend its regulations whenever time, experience, and reasonable planning for contemporary and future conditions reasonably indicate a need for a change. Kaufman v. Zoning Commission, 232 Conn. 122,150 (1995).
When acting as a legislative body, the commission is the formulator of public policy, and its discretion is much broader than that of a body sitting in an administrative or quasi-judicial capacity. ProtectHamden/North Haven from Excessive Traffic Pollution, Inc. v.Planning Zoning Commission, 220 Conn. 527, 543 (1991); Malafrontev. Planning Zoning Board, 155 Conn. 205, 209 (1967).
Zoning must be sufficiently flexible to meet changing conditions, and a commission's action should not be disturbed by a court unless the commission had acted arbitrarily or illegally. Burnham v. Planning Zoning Commission, 189 Conn. 261, 265 (1983).
Conclusions reached by the commission must be upheld if they are reasonably supported by the record. The question is not whether the trial court would have reached the same conclusion, but whether the record before the agency supports the decision reached. Calandro v. ZoningCommission, 176 Conn. 439, 440 (1979).
Questions concerning the credibility of witnesses, and the determination of issues of fact, are matters solely within the province of the land use agency. Property Group, Inc. v. Planning ZoningCommission, 226 Conn. 684, 697 (1993).
Where, as here, a zoning commission has formally stated reasons for its action, a reviewing court should not go beyond the official collective statement and attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the collective decision. DeMaria v. Planning ZoningCommission, 159 Conn. 534, 541 (1970); Central Bank for Savings v.Planning Zoning Commission, 13 Conn. App. 448, 457 (1988).
The commission's decision must be sustained, if even one of the reasons stated is supported by substantial evidence. Goldberg v.Zoning Commission, 173 Conn. 23, 25 (1977).
The substantial evidence rule has been defined as similar to and analogous to, the standard applied in judicial review of jury verdicts. It must be enough to justify, if the trial were to a jury, a refusal to CT Page 2158 direct a verdict when the conclusion sought to be drawn is one of fact.Sampeiri v. Inland Wetlands Agency, 226 Conn. 579, 588 (1993).
The possibility of drawing two inconsistent conclusions from the evidence does not prevent a decision from being supported by substantial evidence. Property Group, Inc. v. Planning Zoning Commission,supra, 697-98.
Because the designation of the Griswold Airport property as the potential site of a Planned Adult Community is analogous to a change of zone, the test of the action of the commission is two fold: 1) the action must be in accordance with the comprehensive plan; and 2) it must be reasonably related to the normal police powers, enumerated in § 8-2
of the General Statutes. First Hartford Realty Corporation v. Planning Zoning Commission, 165 Conn. 533, 541 (1973).
The comprehensive plan of a community consists of the zoning regulations themselves and the zoning map. Burnham v. Planning Zoning Commission, supra, 267; Damick v. Planning ZoningCommission, 158 Conn. 78, 83 (1969).
THE COMMISSION'S ACTION DOES NOT VIOLATE THE UNIFORMITY RULE IN § 8-2
OF THE CONNECTICUT GENERAL STATUTES
While conceding the broad and liberal discretion enjoyed by a municipal planning and zoning commission acting in a legislative capacity, the plaintiffs argue that the Madison Planning and Zoning Commission exceeded its authority, when it voted to approve the overlay zone for the Griswold Airport.
They argue that the action violates the statutory mandate found in § 8-2 C.G.S., in that regulations must be "uniform" throughout the district.
Although creative, this argument is unavailing.
Section 8-2 provides:
 such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration and use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings, structures or uses of land throughout each district, but the regulations . . . may provide CT Page 2159 that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception . . .
In adopting the amendment to its regulations, the Madison Planning and Zoning Commission made the realization of a Planned Adult Community on the Griswold Airport property subject to the special permit process.
A special permit allows use of property in a manner permitted by the zoning regulations. However, the nature of the use, its precise location, and mode of operation must be regulated because of such factors as topography, neighborhood uses, and traffic considerations. BarberinoRealty Development Corp. v. Planning Zoning Commission,222 Conn. 607, 612 (1992).
A zoning authority may attach specific conditions to the approval of a special permit, provided those conditions relate to public health, safety and welfare. Whisper Wind Development Corporation v. Planning Zoning Commission, 32 Conn. App. 515, 528 (1993); § 8-2 C.G.S.
Prior to the adoption of the Planned Adult Community amendment, the commission had recognized the unique character of the airport property. The regulations permitted, subject to obtaining a special permit, the location of business and professional offices on the site.
Section 8-2 C.G.S., provides, notwithstanding the uniformity requirement, that certain classes or kinds or structures and uses of land may be built, after a special permit or special exception is obtained.Michel v. Planning Zoning Commission, 28 Conn. App. 314, 321
(1992).
The use of the special permit, in conjunction with the overlay zone, is directly analogous to the well-established practice of the floating zone, which has repeatedly and consistently been sanctioned by the courts. Schwartz v. Town Plan Zoning Commission, supra, 22-23.
The plaintiffs cite Vesekis v. Planning Zoning Commission,168 Conn. 358 (1975), and Bartsch v. Planning Zoning Commission,6 Conn. App. 686 (1985), in support of their contention that the commission's action violates the uniformity provision of § 8-2
C.G.S.
Neither case lends assistance to their claim.
In Vesekis, a specific property was accorded a more stringent buffer CT Page 2160 requirement than was applicable to other properties in the same zone.Veseskis v. Planning Zoning Commission, supra, 360.
Bartsch involved an attempt by a planning and zoning commission to attach conditions running with the land, restricting the use of the property in question to a medical office building.
The restriction, an attempt at "contract zoning," did not apply to other properties in the zoning district. Therefore, the imposed covenant violated the uniformity provision of § 8-2. Bartsch v. Planning Zoning Commission, supra, 690.
Approval of the overlay zone by the defendant Madison Planning and Zoning Commission represents a legitimate exercise of its statutory powers, and does not violate the uniformity provision found in General Statutes § 8-2.
THE OVERLAY ZONE DOES NOT VIOLATE MADISON'S COMPREHENSIVE PLAN
The plaintiffs' claim that the action of the Madison Planning and Zoning Commission violates the community's comprehensive plan, is akin to a claim that the action constitutes "spot zoning."
This claim is without merit.
In order to sustain a claim of "spot zoning" two separate elements must be satisfied: 1) the change must affect only a small area of land; and 2) the change must be out of harmony with the comprehensive plan, for the good of the community as a whole. Langer v. Planning ZoningCommission, 163 Conn. 453, 461 (1972); Morningside Assn. v. Planning Zoning Board, 162 Conn. 154, 161 (1972). Neither element is present here.
Although the entire parcel is owned by Maryann K. Griswold and Griswold Airport, Inc., and is under contract to a single contract purchaser, its size, 42.5 acres, is considerable.
The property was specifically identified as a unique parcel in the Madison Plan of Development, and was found to be an area which could provide potential expansion of the town's tax base. (ROR #EJ, p. 137.)
Even before the application which is the subject of this appeal was filed, the airport property had been rendered subject to the special exception process, involving potential uses not permitted in an R-1 or R-2 zone. CT Page 2161
The unique character of the property was recognized, and underscored, during the public hearing process.
By linking the creation of a Planned Adult Community to the special exception process, the commission has retained the ability to control development by imposing reasonable conditions upon any special permit or site plan approval.
Although the creation of the overlay zone benefits a single parcel, the public hearing record amply supports the finding that the commission's decision also benefits the community as a whole. Parks v. Planning Zoning Commission, 178 Conn. 657, 661 (1979).
Simply because an individual property owner, or contract purchaser, is benefited by an amendment to the zoning regulations, is not sufficient to find that the action is arbitrary, unreasonable, or contrary to the interests of the community as a whole. Morningside Assn. v. Planning Zoning Board, supra, 162.
The commission's action also finds support in the provisions of Madison's Town Plan.
While it must be noted that the community's Master Plan of Development, adopted pursuant to § 8-23 of the General Statutes, is advisory, the plan can be considered when determining whether a change is in the public interest. Tarasovic v. Zoning Commission, 147 Conn. 65, 71
(1959); § 8-2 C.G.S.
Substantial evidence supports the conclusion that the decision of the commission is in harmony with the comprehensive plan, and is reasonably related to the normal police powers specified in §8-2 C.G.S.
 REASONS PROVIDED BY THE COMMISSION FIND SUPPORT IN THE RECORD
The plaintiffs' final argument is that the commission's decision is not supported by the record.
This claim is without merit.
The commission provided seventeen (17) reasons in support of its decision to amend its regulations and create the overlay zone.
These reasons, individually or collectively, support the action CT Page 2162 taken.
The proposed amendments drew strong and passionate opposition during the public hearing process, both from individual citizens and advocacy groups.
The 5-4 vote by which the amendment was adopted indicates that the commission reflected the deep division within the community exposed during the hearing process.
However, it cannot be said that the commission's reasons for adopting the overlay zone amendment lack substantial evidence in the record.
Although the proposal sparked dissent, both within the commission and within the community at large, the record supports findings that the proposal will serve to expand Madison's Grand List, will serve a need for housing for a segment of the community, will enhance the area, and will provide open space to expand the town's trail system.
The commission's findings concerning the minimal visual impact of the project, and the absence of any adverse impact on the environment, are also reasons which can be extracted from the public hearing proceedings.
The consistency of the proposal with Madison's Town Plan is also supported by substantial evidence.
This court is not called upon to determine whether the commission's majority, or the four commissioners who opposed the amendment, best reflect the public policy of the Town of Madison.
Decisions regarding land use planning and the uses of land within a community are properly committed to municipal officials, charged with land use planning and with establishing priorities.
Municipal land use officials are confronted with the daunting task of balancing the need for an enhanced tax base and housing to serve a segment of an aging population, against the need to retain open space, wildlife preserves and natural resources for future enjoyment, and appreciation.
This court cannot, and should not, attempt to second guess or Monday morning quarterback decisions of a planning and zoning commission, if the liberal discretion with which the commission is vested, has not been abused. CT Page 2163
It should be noted that approval of the overlay zone is only the initial step which those advocating a Planned Adult Community at the Griswold Airport must take.
Before any construction is authorized, the developer must obtain a special permit and site plan approval.
The property is also subject to the provisions of the Coastal Management Act, and a wetlands permit must be obtained.
During public hearings at each of these stages, many of the issues addressed during the public hearings are sure to be revisited and debated.
The plaintiffs' appeal is DISMISSED.
Radcliffe, J.