## ROBERT D. LOH ET AL. *v.* TOWN PLAN AND ZONING COMMISSION OF THE TOWN OF FAIRFIELD ET AL.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued January 5—decided March 30, 1971

*Allan R. Johnson,* for the appellants (plaintiffs).

*Aaron B. Schless,* for the appellee (named defendant).

*Albert A. Garofalo,* pro se, appellee (defendant).

SHAPIRO, J. The defendant plan and zoning commission of the town of Fairfield held a public hearing on November 28, 1967, on the application of the defendant Albert A. Garofalo, seeking to amend the zoning map by changing the classification of a parcel of his land consisting of approximately 6.8 acres from a residence A district to a designed residence district No. 1, hereinafter sometimes referred to as DRD-1. Thereafter, on January 23, 1968, at an executive session, the commission unanimously voted to grant the requested change of zone of the land in question. An appeal was taken to the Court of Common Pleas which heard evidence limited to the issue of its jurisdiction. The court found Mr. and Mrs. Walter E. Nichols, hereinafter referred

to as the plaintiffs, to be aggrieved persons for the purpose of taking the appeal. At the hearing before the court, the plaintiffs moved that the court view the land involved in the zone change and the surrounding area. The court denied the request of the plaintiffs. From a judgment sustaining the action of the commission the plaintiffs have appealed and assign as error the court's failure to view the premises and certain conclusions of the trial court with regard to the granting of the application for a change of zone.

The property covered by the change of zone is situated in Southport in the town of Fairfield. It forms part of a tract of land consisting of approximately 11.8 acres. The 6.8 acres here in question are bounded on one side by the New York, New Haven and Hartford Railroad for approximately 580 feet and on another side by the Connecticut Turnpike for approximately 525 feet.

I

We consider first the plaintiffs' claim of error that the Court of Common Pleas erred in not viewing the premises in issue and the surrounding area and in concluding that it was not necessary to do so. In their brief, the plaintiffs allege that "Southport is unique and that the conditions in Southport are unique and would not be properly appreciated by the Court in the absence of an inspection of the premises and the surrounding area." The plaintiffs, however, have presented no facts to demonstrate that the trial court erred in its conclusion that the record returned by the commission was adequate to present the questions concerned in the appeal. They have not assigned this conclusion as error. See Practice Book § 652. We agree, furthermore, with the trial

court's conclusion that the record returned by the commission was adequate to present the issues before it.

## II

The plaintiffs claim that the change of zone is violative of the town's comprehensive plan. In support of this claim they rely solely upon a plan of development adopted by the commission in 1961. In *Dooley* v. *Town Plan & Zoning Commission,* 154 Conn. 470, 472–73, 226 A.2d 509, we had the occasion to review this plan and stated that the plan of development of 1961 is not a comprehensive plan but rather is a master plan. The designation by this master plan of land uses in various areas is merely advisory. *Dooley* v. *Town Plan & Zoning Commission,* supra, 473. It does not control the commission in its enactment of zoning regulations. Ibid. Essentially, the basic contention of the plaintiffs is that the recommended criteria found in the plan of development for the establishment of "garden apartments" were not satisfied by the defendant Garofalo's application. There is nothing before us, however, which clearly demonstrates that the criteria for "garden apartments" apply to the establishment of a designed residence district No. 1 zone. Any consideration, therefore, of the plaintiffs' contention would require resort to conjecture and surmise. This we cannot do.

The town's comprehensive plan of zoning is to be found in the scheme of the zoning regulations themselves, which are primarily concerned with the use of property. *Lebanon* v. *Woods,* 153 Conn. 182, 188, 215 A.2d 112; see General Statutes § 8-2. The Fairfield zoning regulations provide for the establishment of DRD-1 zones under very detailed and strin-

gent regulations. Fairfield Zoning Regs. § 10.0. A designed residence district No. 1 classification permits, in addition to the uses allowed in the former zone, dwellings for four or more families on lots having a minimum of 9375 square feet for each dwelling plus 3000 square feet for each family in excess of one in any dwelling on the lot. Fairfield Zoning Regs. §§ 10.3, 10.3.1, 10.4. No building or structure can exceed the height of three stories or forty feet, whichever is less. § 10.7. The aggregate lot coverage of all buildings and other structures on any lot cannot exceed 20 percent of the area of the lot. § 10.8. The Fairfield zoning map indicates the existence of DRD-1 zones at various locations in the town.

In voting the change of zone of the land in question, the commission has placed it in a zone which is subject to specific and stringent limitations. Fairfield Zoning Regs. § 25.0. Before any building or structure can be erected on a parcel of land having a DRD-1 classification, an application for a special permit must be presented to the commission. A prospective developer must submit a statement of the proposed use of the property, detailed site and architectural plans, and any other information the commission deems necessary. After the submission of the application, a further public hearing is held. The site plan, architectural design, conformity to the plan of development of the neighborhood, and the general specifications found in § 10 of the regulations are all reviewed by the commission before it grants a special permit. The procedure outlined "affords ample protection to anyone who may be immediately affected." *Summ* v. *Zoning Commission*, 150 Conn. 79, 88, 186 A.2d 160. "In approving the application for a DRD-1 zone, the commission

is implementing the concept of a more flexible land use policy which provides for adequate safeguards." *Dooley* v. *Town Plan & Zoning Commission,* supra, 477.

Among the reasons given by the commission for approving the change of zone were the following: "2. The designation of the 6.8 acres of land for Designed Residence District #1 uses is an appropriate and logical development within the neighborhood and will insure the long range protection of the value of residential environment. 3. The site is logically located within reasonable distance of community facilities and major highways to provide for the proper traffic circulation. 4. The Designed District classification and special permit requirements will assure the appropriate development of such character to harmonize with the neighborhood, to enhance the appearance of the community and to avoid undue traffic congestion. 5. The Designed Residence District #1 classification permits moderate increase in residential density while preserving the long range residential value of the neighborhood."

"The circumstances and conditions in matters of zone changes and regulations are peculiarly within the knowledge of the zoning commission. Where it appears that an honest judgement has been reasonably and fairly exercised after a full hearing, courts should be cautious about disturbing the decision of the local authority." *Kutcher* v. *Town Planning Commission,* 138 Conn. 705, 710, 88 A.2d 538. The evidence before the commission was such as to support, fairly and reasonably, its conclusion that the change of zone applied for would permit the use of the land for a purpose which was suitable and appropriate. The record before it adequately supported

the reasons assigned for its action. The change of zone was a logical development of the town's comprehensive plan.

## III

The plaintiffs claim that the action of the commission constitutes spot zoning and is, therefore, invalid. As we stated in *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* 152 Conn. 7, 12, 202 A.2d 241, "[t]wo elements must coexist in order to constitute spot zoning. First, there must be a change in zone applicable only to a small area. Second, this change must be out of harmony with the comprehensive plan for the good of the community as a whole." Since the change of zone, as we have previously indicated, is in harmony with the comprehensive plan, it cannot be classified as spot zoning. *Furtney* v. *Zoning Commission,* 159 Conn. 585, 601, 271 A.2d 319; *Metropolitan Homes, Inc.* v. *Town Plan & Zoning Commission,* supra.

## IV

The plaintiffs urge that the change of zone was contrary to certain requirements of § 8-2 of the General Statutes. "In an appeal from a zoning board of appeals or a zoning commission, any portion of the record before the board or commission which was returned to the trial court but was not included in the printed record shall, if a party desires to present it to us, be printed only in an appendix to the brief." *Ruggles* v. *Town Plan & Zoning Commission,* 154 Conn. 711, 712, 226 A.2d 108; Practice Book §§ 647, 716, 721, see § 719. The plaintiffs' appendix contains no evidence which would support the claim that the change of zone to a DRD-1 classification is contrary to certain provisions of § 8-2.

## V

The plaintiffs contend that, in the absence of changed circumstances, the commission was without authority to grant the application for the change of zone, "having denied the identical application several months prior thereto, the only change being that this application encompassed smaller acreage than the prior application." The facts pertinent to this contention are as follows: On June 13, 1967, a public hearing was held on an application by the defendant Garofalo for a change of zone to DRD-1 of approximately 11.8 acres. As already recited, the 11.8 acres includes the land here in question. On August 1, 1967, the commission, in executive session, denied the change of zone for the 11.8 acres without stating any reasons for such denial. The commission concedes in its brief that there had been no changes in circumstances since the denial of the prior application.

It cannot be said that the zone change acted on in August, 1967, involved substantially the same area as that now before us. The denial of the previous application did not preclude the commission from approving the present application. *Tarasovic* v. *Zoning Commission,* 147 Conn. 65, 70, 157 A.2d 103. Furthermore, a zoning commission acts in a legislative capacity when it amends its regulations or alters zone boundaries. *Malafronte* v. *Planning & Zoning Board,* 155 Conn. 205, 209, 230 A.2d 606; *Hawkes* v. *Town Plan & Zoning Commission,* 156 Conn. 207, 209, 240 A.2d 914. When acting in this legislative capacity, a zoning commission is not necessarily bound by the rule which prohibits administrative boards from reversing earlier decisions without a change of circumstances. *Hawkes* v. *Town Plan & Zoning Commission,* supra, 209, 210; *Mala-*

*fronte* v. *Planning & Zoning Board,* supra, 209. This rule will be applied only if it appears that the commission is acting arbitrarily. Ibid. As already indicated, the change is in harmony with the town's comprehensive plan. Under these circumstances, the plaintiffs have failed to show any facts demonstrating that the action of the commission in denying the previous application for a zone change covering a different area, though that area included the parcel embraced in the present application, would preclude the granting of the present application. See *Allin* v. *Zoning Commission,* 150 Conn. 129, 135, 186 A.2d 802.

## VI

The plaintiffs claim that the failure of John E. Wrabel, one of the members of the commission who voted in the executive session of January 23, 1968, to attend the public hearing on November 28, 1967, renders the change of zone illegal. The burden of proving that the action of the commission in the zone change was illegal was on the plaintiffs. *Chucta* v. *Planning & Zoning Commission,* 154 Conn. 393, 394–95, 225 A.2d 822. As already recited, the trial court heard evidence only on the issue of its jurisdiction. It nowhere appears that the plaintiffs requested the Court of Common Pleas to allow the introduction of evidence on the issue of the disqualification of a commission member. See General Statutes § 8-8. No reason appears why this could not have been done. The court decided this issue solely on the record returned to it by the commission. This is the record returned to us pursuant to Practice Book § 647 and on which we review the conclusion of the trial court that the participation of Wrabel in the decision to change the zone did not render that decision void.

We turn to General Statutes § 8-3 which provides the procedure which a zoning commission is to follow in order validly to effect changes in regulations and in zone boundaries.[1] It is clear that this statute does not require the presence at the public hearing of a zoning commission member as a condition precedent for that member to vote on a change in regulations or zone boundaries. In *Strain* v. *Mims,* 123 Conn. 275, 282, 193 A. 754, we considered a predecessor to § 8-3 (Rev. 1930 § 425), and stated: "The purpose of the public hearing is . . . to inform the memmers of the commission as to the reasons why the change should or should not be made." We there noted that it is "advisable" that members of the commission attend the hearing. Id., 283. Yet, occasions may arise where, because of illness or other inability, a member may be unable to attend the hearing. Such a member should not be prohibited from voting on a change provided he "seek[s] to make and . . .

---

[1] The pertinent portion of the statute reads as follows:

"§ 8-3. ENFORCEMENT OF REGULATIONS; PUBLIC HEARINGS; CHANGES. Such zoning commission shall provide for the manner in which regulations . . . and the boundaries of zoning districts shall be respectively enforced and established and amended or changed. No such regulation or boundary shall become effective or be established until after a public hearing in relation thereto, held by a majority of the members of the zoning commission or a committee thereof appointed for that purpose consisting of at least five members, at which parties in interest and citizens shall have an opportunity to be heard . . . . Such regulations and boundaries may, from time to time, be amended, changed or repealed by such zoning commission by a majority vote of the commission, except as otherwise provided in this chapter. If a protest is filed at such hearing with the zoning commission against such change, signed by the owners of twenty per cent or more of the area of the lots included in such proposed change or of the lots within five hundred feet in all directions of the property included in the proposed change, such change shall not be adopted except by a vote of two-thirds of all the members of the zoning commission. The provisions of this section relative to public hearings . . . shall apply to all changes or amendments".

[has] the means to make an informed decision, one that is based on knowledge sufficient for 'wise and proper judgment.'" *Matter of Taub* v. *Pirnie,* 3 N.Y.2d 188, 194, 144 N.E.2d 3. While, as we have indicated, § 8-3 does not by its terms require the presence at a public hearing of a commission member, it is equally clear, in view of the purpose of the public hearing, that the legislature could not have intended that a member who had not been present at the public hearing could lawfully vote on a change without first acquainting himself sufficiently with the issues raised and the evidence and the arguments presented at the public hearing. We, therefore, construe § 8-3 to mean that a member of a zoning commission, although not present at the public hearing, may lawfully vote on a proposed change in regulations or zone boundaries if that member acquaints himself sufficiently with the issues raised and the evidence and arguments presented at the public hearing in order to exercise an informed judgment.

In the case at bar, we need not decide whether Wrabel's participation in the commission's decision to change the zone of the land in question vitiated the entire vote of the commission, since the record indicates that the plaintiffs had not sustained the burden of proving his vote was unlawful. The following facts are not in dispute: Wrabel participated in the commission's executive session of August 1, 1967, in which the previous Garofalo application was denied. He was not present at the public hearing held on November 28, 1967. He voted in the executive session of January 23, 1968. The defendant commission alleges in its brief that Wrabel was present at the hearing held on June 13, 1967, and that he listened to a tape of the transcript of the hearing of November 28, 1967, although there is

nothing in the record before us which shows these alleged facts. The plaintiffs, nevertheless, who had the burden of proof, chose not to introduce any evidence to show that Wrabel did not sufficiently acquaint himself with the issues raised and the evidence and the arguments presented at the public hearing of November 28, 1967. We cannot, therefore, disturb the trial court's conclusion that the member absent from the public hearing was not disqualified from voting on the change of zone.

There is no error.

In this opinion the other judges concurred.