[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Phyllis Stephenson ("Stephenson"), brings this appeal from a decision of the defendant, the Zoning Board of the City of Stamford (the "Board"), granting various applications of the defendants, Landmark America, LLC ("Landmark America"), the City of Stamford ("City"), and Richard Redniss ("Redniss").
The plaintiff alleges that the defendant, Landmark America, is the contract purchaser of the land where the Burdick School once stood in the City of Stamford. (Appeal, ¶ 2). The plaintiff alleges that she "lives in a home of frame construction approximately two and one half stories high immediately contiguous to [that land]." (Appeal, ¶ 6). She alleges that the defendant, Landmark America, proposes to build a high-rise structure which will consist of 306 units, plus parking facilities. (Appeal, ¶ 6). She claims that this "will totally CT Page 5436 dwarf her property and adversely impact traffic, parking, her own property use, and her property values and those of her neighbors." (Appeal, ¶ 6).
By applications dated December 5, and December 23, 1997, the defendants, Landmark America, the City of Stamford, and Redniss, applied to the defendant, the Zoning Board, for various text changes of the Stamford Zoning Regulations and changes to the zoning map of Stamford. They also applied to the Board for approval of site plans and/or requested uses. (Return of Record [ROR], Exhibits A1, D1, B1 C1, respectively).
On February 23, 1998, the Board conducted public hearings on all of the defendants' applications. (ROR, Exhibit E2). After discussion, the Board voted to approve the defendants' applications. (ROR, Exhibits A4, B5, C15, D5, E1).
The Board unanimously approved, as modified, the proposed amendment to the Zoning Regulations of the City of Stamford upon application of the defendant, Redniss. (ROR, Exhibits A4, D5). The Board "approved the proposed amendment to the Zoning Map of the City of Stamford," upon application of the defendants, the City of Stamford and Landmark America. (ROR, Exhibit B5). The Board also "approved with conditions the application . . . requesting approval of Site and Architectural Plans and Requested Uses for a 14-story, 306 unit residential complex with parking facilities and amenities. . . ." (ROR, Exhibit C15). Notice of the Board's decisions was published in the Stamford Advocate on March 6, 1998. (Appeal, ¶ 4; ROR, Exhibits B5, C15, D5).
The plaintiff now appeals the decisions from the Board's approvals of the various applications. She alleges that "[i]n granting the applications, the board acted illegally, arbitrarily [and] in an abuse of the discretion vested in it."(Appeal, ¶ 7). The plaintiff alleges that the action of the board constituted spot-zoning, not in accordance with the comprehensive plan. (Appeal, ¶ 7(1)). She further alleges that she was "denied a fair opportunity to be heard and confront the witnesses with the fair right of cross-examination."(Appeal, ¶ 7(2)).
The plaintiff also alleges that the Board's decisions were unreasonable "[s]ince defendant's staff and board members work for the City of Stamford which is also the owner of the property and which desires to put $6,000,000.00 in the City coffers." (Appeal, ¶ 7(3)). Moreover, the plaintiff alleges that the Board CT Page 5437 did not make required findings and that the applications were invalid because application fees were not paid. (Appeal, ¶¶ 7(4) and (5)). The plaintiff further alleges that the Board did not act independently. (Appeal, ¶ 7(8)).
General Statutes § 8-8 governs appeals taken from the decisions of a zoning board to the Superior Court. In order to take advantage of a statutory right of appeal, the parties must comply strictly with the statutory provisions that create such a right. Bridgeport Bowl-O-Rama, Inc. v. Zoning Board of Appeals,195 Conn. 276, 283, 487 A.2d 559 (1985).
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal." Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192, 676 A.2d 831 (1996). At a hearing held by this court on January 13, 1999, and continued on January 27, 1999 and February 4, 1999, the plaintiff was found to be an aggrieved person pursuant to General Statutes § 8-8 (a)(1), in that she is the owner of the property located beside the subject property involved in the various applications. At the hearing, the plaintiff offered into evidence a deed for her land. (Plaintiff's Exhibit 1). Therefore, the court finds that the plaintiff is aggrieved and, as such, has standing to maintain the appeal.
General Statutes § 8-8 (b) provides, in pertinent part, that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes."
Subsection (e) further provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or the clerk of the board, and by leaving a true and attested copy with the clerk of the municipality."
Notice of the applications' approvals was published in theStamford Advocate on Friday, March 6, 1998. (ROR, Exhibits B5, C15, D5). Service of process was made on the town clerk and the chairman of the zoning board on March 20, 1998. This court finds that this appeal was commenced in a timely fashion by service of process upon the proper parties.
A zoning board acts in a legislative capacity when it renders CT Page 5438 a decision on an application for a change in zone district.Burnham v. Planning Zoning Commission of South Windsor,189 Conn. 261, 265, 455 A.2d 339 (1983). "[L]egislative discretion is wide and liberal, and must not be disturbed by the court unless the party aggrieved by that decision establishes that the [board] acted arbitrarily or illegally." (Internal quotation marks omitted.) Protect Hamden/North Haven from Excessive Traffic Pollution. Inc. v. Planning Zoning Commission of Hamden220 Conn. 527, 543, 600 A.2d 757 (1991).
"[I]t is not the function of the court to retry the case. Conclusions reached by the [board] must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." (Internal quotation marks omitted.)Protect Hamden/North Haven from Excessive Traffic Pollution.Inc. v. Planning Zoning Commission of Hamden, supra,220 Conn. 542-43; Burnham v. Planning Zoning Commission of South Windsor, supra, 189 Conn. 265.
"Courts will not interfere with [the board's] legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion. . . . Within these broad parameters, [t]he test of the action of the [board] is two fold: (1) The zone change must be in accord with a comprehensive plan . . . and (2) it must be reasonably related to the normal police power purposes enumerated in [General Statutes §] 8-2." (Citations omitted; internal quotation marks omitted.) Protect Hamden/North Havenfrom Excessive Traffic Pollution. Inc. v. Planning ZoningCommission of Hamden, supra, 220 Conn. 543-44. "This broad legislative discretion applicable to the approval of a zone change is equally applicable to the denial of a requested zone change." Homart Development Co. v. Planning Zoning Commissionof Watertown. 26 Conn. App. 212, 216, 600 A.2d 13 (1991).
At the hearing before this court, the plaintiff argued that this appeal should be sustained because the certified record "does not include any indication that, as required by statute, the proposed amendments and zone changes were filed in the Town Clerk's Office." (Plaintiff's Administrative Appeal Brief [Plaintiff's Brief], p. 11). General Statutes § 8-3 (a) provides, in pertinent part, that notice of proposed changes to the zoning CT Page 5439 regulations must be both "published in the form of a legal advertisement appearing in a newspaper having a substantial circulation in such municipality . . . [and] shall be filed in the office of the town, city or borough clerk . . . at least ten days before such hearing . . . ." The plaintiff argued that the return of record does not include any indication that such notice was filed with the town clerk.
"There is a strong presumption of regularity in the proceedings of a public body such as [the] . . . Commission."Murach v. Planning Zoning Commission of New London,196 Conn. 192, 205, 491 A.2d 1058 (1985). "Where there is no substantial evidence to the contrary, it must be concluded that plaintiffs have filed for public inspection as required by § 8-3(a)." Borisv. Garbo Lobster Co. Superior Court, judicial district of New London, Docket No. 539867 (Mar. 24, 1998, Purtill, J.T.R.). "Public officials are presumed to have done their duty until the contrary appears." Leib v. Board of Examiners for Nursing,177 Conn. 78, 84, 411 A.2d 42 (1979).
Furthermore, "[t]he court shall review the proceedings of the board and shall allow any party to introduce evidence in addition to the contents of the record if . . . it appears to the court that additional testimony is necessary for the equitable disposition of the appeal." General Statutes § 8-8 (k). The court, upon proper motion, allowed the defendants to introduce additional evidence pertaining to the issue that the proper notices, indeed, were filed with the town. The court heard the testimony of the clerk of the zoning board who testified that she filed the proposed zoning regulations and map changes with the town clerk in a timely fashion. Thus, this court finds that General Statutes § 8-3 (a) has been satisfied and the appeal cannot be sustained on this ground.
The plaintiff alleges that the appeal should be sustained on the ground that "the defendant did not fulfill its obligation regarding traffic safety standards." (Plaintiff's Brief, p. 11). The plaintiff argues that when approving a site plan, the board must make "affirmative findings . . ., that traffic safety concerns have been addressed . . . [and here no] such finding was made." (Plaintiff's Brief, p. 12).
"In reviewing site plans the Zoning Board shall take into consideration the purpose of these Regulations, including the purposes of the applicable zoning district and the goals and CT Page 5440 policies of the Stamford Plan, the public health, safety and general welfare and convenience of the general public and the maintenance of the property values. In its review the Board may modify a site plan or condition as approval to the extent necessary to conform the site plan to the following standards and objectives: (1) Safe, adequate and convenient vehicular traffic circulation, operation, parking and loading, and pedestrian circulation, both within and without the site. . . ." (Stamford Zoning Regulations § 7.2(D)(1)).
The plaintiff contends that the Board failed to make an affirmative finding concerning traffic safety. The plaintiff argues that the Board placed an invalid condition on its site plan approval "in that the future possible reversal of flow does not answer the current traffic safety issues." (Plaintiff's Brief, p. 11). Upon review of the record, however, it is evident that the Board did consider traffic safety before it approved the application.
The transportation planner, by letter to the zoning board dated February 17, 1998, concluded that "[t]he traffic generated by the Greyrock Towers project will result in minimal level of service impacts on the adjacent streets" and that improvement projects are already being discussed to improve the situation. (ROR, Exhibits C10, A3, B4, C8, D4). Furthermore, three traffic studies were conducted by Barkan Mess Associates, Inc., traffic engineers and transportation planners. (ROR, Exhibits C1f, C3, C7).
The proposed site is located north of Forest Street between Greyrock Place and Grove Street. (ROR, Exhibit C1f, p. 1). Currently, Greyrock Place is a one-way northbound street. (ROR, Exhibit C1f, p. 2). The first traffic study determined that "[t]he impact on traffic in this area by these projects will be small." (ROR, Exhibit C1f, p. 6).
Barkan Mess Associates conducted a second traffic study and again concluded that "with implementation of the recommendations outlined, operations would not be affected in the vicinity of the site." (ROR, Exhibit C3, p. 8). This second traffic study recognized that this project would have an impact on traffic in the area. However, it further analyzed what, if any, effect there would be if the one-way flow of traffic was reversed on Greyrock Place. The study recognized that reversing the flow of traffic would result "in several significant benefits in terms of CT Page 5441 operational characteristics in the vicinity of the site." (ROR, Exhibit C3, p. 4).
The study also indicated that other improvements to Greyrock Place have been recommended and that such recommendations "will result in significantly improved levels of service." (ROR, Exhibit C3, p. 6). This second traffic study determined that although there may already be poor traffic conditions in the area, the conditions are not expected to be exacerbated, but might, in fact, be improved. (ROR, Exhibit C3, pp. 7-9).
In the third traffic study, the transportation engineers determined that "the traffic from [the site] can be adequately accommodated with a one-way Greyrock Place in either direction." (ROR, Exhibit C7, p. 1). It further held that the possible increase in traffic can "easily be accommodated at the signalized intersections in the vicinity of the site." (ROR, Exhibit C7, p. 2). The third traffic report concluded that "the Greyrock Towers residential high-rise will not significantly impact traffic in the vicinity of the site. With some minor adjustments . . . the existing levels of service can be maintained and/or improved. . . . As stated at the outset, it is our opinion that the impact of this development is small whether Greyrock Place . . . is one-way clockwise or counter-clockwise." (ROR, Exhibit C7, pp. 4-5).
The Board was presented with the three traffic studies as well as the letter from the transportation planner. The Board held a hearing on February 23, 1998 to discuss the defendants' various applications. Throughout the hearing, the Board discussed traffic safety issues concerning the approval of this project. (ROR, Exhibit E2).
The Board was aware that people tend to drive fast in that area and that it may be difficult to traverse. (ROR, Exhibit E2, pp. 33, 47, 53, 55, 61). The Board indicated that it viewed the site and "had to scurry out of the way several times from getting hit" since the site line was poor. (ROR, Exhibit E2, p. 56). However, there was also much discussion about improvements that were being planned for the area streets. (ROR, Exhibit E2, pp. 50, 53, 57).
The Board discussed the three traffic reports which were submitted by the traffic engineers and transportation planners. (ROR, Exhibit E2, pp. 51-59). It was explained that the traffic CT Page 5442 concerns were first analyzed if the traffic flowed in the current clockwise direction and then if the flow of traffic were reversed. (ROR, Exhibit E2, pp. 51-59).
The Board heard testimony from a representative of Barkan 
Mess, the traffic engineers and transportation planners, who conducted the traffic studies. (ROR, E2, pp. 97-100). The Board heard testimony that "the existing traffic problems in the area are being addressed by current projects and that the impacts of this property are minimal to those larger city-wide issues; however, one thing that was talked about is some further traffic study . . . ."
In sum, the Board heard extensive testimony at the hearing regarding traffic safety concerns. (ROR, Exhibit E2). The Board was also presented with various traffic studies and reports conducted by traffic engineers and transportation planners. (ROR, Exhibits, C1f, C3, C7). The Board ultimately approved the defendants' applications. This court finds that the Board did "fulfill its obligation regarding traffic safety standards" and the plaintiff's appeal cannot be sustained on this ground.
The plaintiff also appeals the decisions of the zoning board on the ground that the Board "did not fulfill its obligation regarding traffic safety standards [in that paragraph four] is an invalid condition in that the future possible reversal of flow does not answer the current traffic safety issues." (Plaintiff's Brief, p. 11). The site plan approval by the Board states that "[t]he applicant agrees to support the reversal of the direction of traffic on Greyrock Place and agrees to reconstruct private driveways on the north side of the street to maintain their function if the City approves the reversal of traffic direction prior to issuance of a final Certificate of Occupancy, subject to approval of driveway reconstruction plans by Land Use Bureau staff." (ROR, Exhibit E1, ¶ 4).
The Board did consider the traffic issues presented to it before it approved the application. The Stamford Zoning Regulations state that "[i]n reviewing site plans the Zoning Board shall take into consideration the purposes of these Regulations, including the purpose of the applicable zoning district and goals and policies of the Stamford Master Plan, the public health, safety and general welfare and convenience of the general public and the maintenance of property values. In its review the Board may modify a site plan, or condition an approval CT Page 5443 to the extent necessary, to conform the site plan to the following standards and objectives: (1) Safe, adequate and convenient vehicular traffic circulation, operation, parking and loading, and pedestrian circulation, both within and without the site. . . ." (Emphasis added.) (Stamford Zoning Regulations § 7.2 (D)).
The Board did "take into consideration" the traffic issues presented and then elected to approve the site plan application. When reviewing a site plan, the Board "has no independent discretion beyond determining whether the plan complies with the site plan regulations and applicable zoning regulations incorporated by reference. A site plan may be modified or denied only if it fails to comply with requirements already set forth in the regulations." Connecticut Resources Recovery Authority v.Planning Commission, 46 Conn. App. 566, 569-70, 700 A.2d 670, cert. denied, 243 Conn. 935, 702 A.2d 640 (1997).
"Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted; omissions in original.) Bloomv. Zoning Board of Appeals, 233 Conn. 198, 206, 658 A.2d 559
(1995). "The burden of proof to demonstrate that the board acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Id. "The question on appeal is not whether the court would have reached the same conclusion as the agency, but whether the record before the agency supports the decision reached."Burnham v. Planning and Zoning Commission of South Windsor, supra, 189 Conn. 266.
In this case, the Board was presented with numerous traffic studies, memoranda regarding traffic safety and letters from traffic engineers and transportation planners. There was also significant discussion of the traffic issues at the hearing. The Board, after receiving all of the pertinent information, elected to approve the application. This court cannot substitute its judgment for that of the Board and there is adequate evidence in the record that the Board addressed the traffic safety concerns. Therefore, the plaintiff's appeal cannot be sustained on this ground. CT Page 5444
The plaintiff next alleges that this appeal should be sustained because the plaintiff's counsel "was deprived of all meaningful right to cross examine despite repeated efforts. . . . [and] Plaintiff was deprived a fair opportunity to be heard on the record." However, this court does not agree with the plaintiff "There is . . . no right to cross-examination of speakers to the extent allowed in court proceedings." Land UseLaw and Practice, Robert A. Fuller, Connecticut Practice Series, volume 9, § 20.12. The record reflects that the plaintiff's attorney was given an ample opportunity to present his position to the Board.
When plaintiff's counsel requested cross-examination at the hearing, the Board stated that "this is not a court of law, and we do have a procedure . . . and you will have an ample opportunity to speak. . . . You can direct your questions through the Chair." (ROR, Exhibit E2, pp. 37-38). The Board further stated that the plaintiff's attorney "may address [his] questions to the Board and on rebuttal the applicant will, if they choose to, answer [his] questions. . . . [T]he process is if you have questions you wish to ask the applicant please address them through the Chair. . . . The applicant will answer your questions . . . or not depending on which they choose. It's not a court of law, and we don't have a cross-examination procedure. The charter specifically states the process." (ROR, Exhibit E2, pp. 63-64).
The plaintiff cites the case of Parsons v. Board of ZoningAppeals, 140 Conn. 290, 99 A.2d 149 (1953), for the proposition that "this appeal should be sustained and the approvals vitiated with a remand to the board level with direction to permit counsel meaningfully to question the applicant's witnesses." (Plaintiff's Brief, pp. 12-13). However, the court in Parsons found that opposing counsel "had ample opportunity to refute [the testimony] and in fact did contradict it in certain particulars." Parsons v.Zoning Board of Appeals, supra, 140 Conn. 293. That is exactly what happened in the present case. Though plaintiff's counsel was denied the right to cross-examine, he was given ample opportunity to refute the evidence and present any evidence he wanted and, in fact, he did both.
Because "[t]here is . . . no right to cross-examination of speakers to the extent allowed in court proceedings"; Land UseLaw and Practice, Robert A. Fuller, Connecticut Practice Series, volume 9, § 20.12; and plaintiff's counsel "had an ample CT Page 5445 opportunity to refute [the testimony] and in fact did contradict it in certain particulars"; Parsons v. Zoning Board of Appeals, supra, 140 Conn. 293, this court finds that the plaintiff was not deprived of the right to meaningful cross-examination. As such, the plaintiff's appeal cannot be sustained on this ground.
Finally[1], the plaintiff appeals the Board's decisions on the ground that "[p]lanting the `floating zone' on one City owned parcel comprising approximately 17 stories, constitutes spot zoning because the intensity is simply inconsistent with the surrounding area." (Plaintiff's Brief, p. 13). "Spot zoning is the reclassification of a small area of land in such a manner as to disturb the tenor of the surrounding neighborhood. . . . Two elements must be satisfied before spot zoning can be said to exist. First, the zone change must concern a small area of land. Second, the change must be out of harmony with the comprehensive plan for zoning adopted to serve the needs of the community as a whole." (Citation omitted; internal quotation marks omitted.)Blaker v. Planning Zoning Commission, 212 Conn. 471, 483,562 A.2d 1093 (1989). Zone changes which are in harmony with the comprehensive plan are not spot zoning. Loh v. Town Plan ZoningCommission, 161 Conn. 32, 38, 282 A.2d 894 (1971).
"A comprehensive plan has been defined as a general plan to control and direct the use and development of property in a municipality or a large part thereof by dividing it into districts according to the present and potential use of the properties. . . . The requirement of a comprehensive plan is generally satisfied when the zoning authority acts with the intention of promoting the best interest of the entire community." (Citation omitted; internal quotation marks omitted.)First Hartford Realty Corp. v. Plan Zoning Commission ofBloomfield, 165 Conn. 533, 541, 338 A.2d 490 (1973). "The comprehensive plan is to be found in the scheme of the zoning regulations themselves." Blaker v. Planning Zoning Commission, supra, 212 Conn. 483. "In the absence of a formally adopted comprehensive plan, a town's comprehensive plan is to be found in the scheme of the zoning regulations themselves." (Internal quotation marks omitted.) Protect Hamden/North Haven fromExcessive Traffic Pollution, Inc. v. Planning ZoningCommission of Hamden, supra, 220 Conn. 551.
A zoning board acts in its legislative capacity when it renders a decision on an application for a change in zone district. Burnham v. Planning Zoning Commission of SouthCT Page 5446Windsor, supra, 189 Conn. 265. "[L]egislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the [board] acted arbitrarily or illegally." (Internal quotation marks omitted.) Protect Hamden/North Haven From Excessive Traffic Pollution, Inc. v. Planning Zoning Commission of Hamden, supra,220 Conn. 543.
Article I, § I of the Stamford zoning regulations sets forth their purpose which includes, "to encourage the most appropriate use of land; to conserve and stabilize the value of property . . . to promote health, safety and the general welfare; and to that end to designate, regulate and restrict the location and use of buildings . . . to regulate and limit height, number of stories and size of buildings and other structures hereafter erected or altered. . . ." (Stamford Zoning Regulations, Article I, § 1). "The purpose of Stamford's zoning regulations generally follows the statement of purpose in General Statutes §§ 8-2." 778Lone Ridge Associates Limited Partnership v. Stamford-ZoningBoard, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 153717 (Apr. 9, 1998). Section 8-2 also provides that "[s]uch regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses. . . ." General Statutes § 8-2.
The defendants filed an application to the Board for a zone change from an R-H zone district to a P-D zone district. (ROR, Exhibit B1). The original R-H zone is a "high density," "multiple family design district." (Stamford Zoning Regulations, § 9(D)). The purpose of this district is "to set aside areas which have been and may be developed predominantly for high density high-rise dwellings." (Stamford Zoning Regulations, § 9(D)).
The proposed P-D Planned Development District is described as "[a]ny parcel of land or aggregation of parcels of land to be developed, redeveloped or rehabilitated principally for housing, and where the excellence of the overall design in accordance with the criteria listed below is such as to warrant special consideration for modification of standards contained elsewhere in these regulations may be designated by the Zoning Board . . . where a determination is made that the following objectives are met: (a) The proposed development is consistent with the Master Plan and the objectives of comprehensive plans for redevelopment, renewal or neighborhood preservation and rehabilitation by the CT Page 5447 City of Stamford. . . . (b) The proposed development consists of such uses and such proportions as are most appropriate to its functional integration into the neighborhood. . . . (c) The proposed development site plan is so designed in its space allocation, orientation, materials, landscaping and other features as to produce a stable and desirable character, complimentary to the surrounding neighborhood. . . . [and] (d) The proposed development includes or supports the production of dwelling units available at less than market rates." (Stamford Zoning Regulations, § 9 (AA)). The various requirements for a P-D Planned Development District are set forth in the Stamford Zoning Regulations at Section 9 (AA)(3). The proposed Greyrock Towers does comply with the standards of a P-D zone. (ROR, Exhibit C1b).
Furthermore, the Chairman of the Stamford Planning Board indicated, by letter to the Zoning Board dated February 18, 1998, that "[t]he Planning Board noted that the proposed housing complex is located within the `collar' area . . . and is, therefore, in conformance with the Master Plan designation of this area for high density multi-family development. The Board is pleased to see utilization of the affordable housing component of the P-D District to provide thirty-nine units of below market rate housing. The proposed high rise complex is compatible with other housing developments in the area." (ROR, Exhibit E3). Also, in the memorandum to the Zoning Board dated February 18, 1998, the principal planner of Stamford indicated that "[t]he Planning Board's referral comment in support of the zone change and site plan summarizes the important facts that this development site is in the highest density residential category (Category #5), the highest mapped residential zone R-H, and within the collar area where the highest residential density is encouraged." (ROR, Exhibit C8).
Moreover, the executive director of the Stamford Downtown Special Services District wrote a letter to the Zoning Board, dated February 17, 1998, in support of the zone change. (ROR, Exhibit C11). The letter states that "[t]his project could build upon the firm foundation of residential developments already within the downtown and, as previous residential projects have illustrated, further bolster the vitality of the district. . . . A strong residential presence, in both the core and collar of a central business district, is a primary component in achieving the vibrant street life which is the hallmark of a successful city." (ROR, Exhibit C11). The letter concludes by stating that "[t]here is limited opportunity downtown for such ideal CT Page 5448 development. The project needs to take advantage of the P-D Zoning incentives to boost residential density and in turn the vitality of Stamford Downtown. I urge both Boards to vote favorably on the Zone Change and site plan approvals in order to expedite the commencement of this important downtown residential project." (ROR, Exhibit C11).
Ultimately, the Board voted to unanimously approve the defendants' application to change the zone to the P-D Planned Development District. (ROR, Exhibit E1). This approval of a zone change does not constitute "spot zoning" since this change is consistent with the comprehensive plan. As such, the Board did not act illegally, arbitrarily and in abuse of its discretion in granting the zone change of the defendants' application and the plaintiff's appeal cannot be sustained on this ground.
"[I]t is not the function of the court to retry the case. Conclusions reached by the [board] must be upheld by the trial court if they are reasonably supported by the record." (Internal quotation marks omitted.) Protect Hamden/North Haven fromExcessive Traffic Pollution, Inc. v. Planning ZoningCommission of Hamden, supra, 220 Conn. 542-43; Burnham v.Planning Zoning Commission of South Windsor, supra,189 Conn. 265. This court finds that the conclusions reached by the Board, when it approved the various applications, are reasonably supported by the record. The Board did not act illegally, arbitrarily or in abuse of its discretion. Furthermore, the
appeal could not be sustained on any of the grounds set forth by the plaintiff. As such, the plaintiff's appeal is hereby dismissed.
KARAZIN, J