ROBERT LORENZ ET AL. *v.* INLAND WETLANDS AND
WATERCOURSES COMMISSION OF THE TOWN
OF OLD SAYBROOK ET AL.
(AC 30043)
(AC 30044)

DiPentima, Robinson and Hennessy, Js.*

* The listing of judges reflects their seniority status on this court as of
the date of oral argument.

Argued January 14—officially released October 12, 2010

*Roger Reynolds*, with whom, on the brief, were *Erich Heinonen* and *Lynn Kelly*, law student interns, for the appellants (plaintiffs).

*Joseph Rubin*, associate attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *David H. Wrinn* and *Kimberly P. Massicotte*, assistant attorneys general, for the appellant (defendant commissioner of environmental protection).

*Michael E. Cronin, Jr.*, for the appellee (named defendant).

*David M. Royston*, with whom, on the brief, was *Katharine S. Gillespie*, for the appellee (defendant River Sound Development, LLC).

*Opinion*

ROBINSON, J. The plaintiffs, Robert Lorenz, Carol Lorenz-Holland and the Connecticut Fund for the Environment, Inc., appeal from the judgment of the trial court, *Aurigemma, J.*, dismissing their appeal from the decision by the defendant inland wetlands and watercourses commission of the town of Old Saybrook (commission) that approved an application to permit regulated activity relating to the construction of a private country club and golf course in a wetlands area, as submitted by the defendant River Sound Development, LLC (River Sound).[1] On appeal, the plaintiffs argue that Judge Aurigemma impermissibly: (1) overturned a prior ruling in this case by the court, *Munro, J.*, which held that an illegal condition required by the permit application was integral and could not be excised by the court

[1] In addition to the commission and River Sound, the commissioner of environmental protection (commissioner) intervened as a defendant in this case and filed a separate appeal, although the commissioner supports the position taken by the plaintiffs. Accordingly, our reference to the plaintiffs in this opinion shall include the commissioner.

to allow approval of the remainder of the application; (2) upheld the commission's failure to comply with the law of the case established by Judge Munro's decision; (3) upheld the commission's approval of a modified application to engage in regulated activity in a wetland without first considering the factors articulated in General Statutes § 22a-41; and (4) upheld the commission's decision to allow new commission members to vote on the modified application without having attended the original hearings. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of these appeals. In January, 2000, River Sound applied for two wetlands permits from the commission.[2] The first was for a twenty-five lot subdivision that included a golf course lot,[3] while the second was for a private country club that included an eighteen hole golf course. In connection with the second application, of the 239.4 acres that were the subject of the development, regulated activities were proposed to take place on approximately 7.19 acres of wetlands, which was to include the removal of forest canopy for the construction of cart paths and fairways. The construction of tees, greens, paved paths or roads, and buildings were not proposed for this wetland area. There were, however, approximately 32 acres of regulated activity that were proposed for areas within 100 feet of the wetlands boundary, and the proposed activity

_____

[2] River Sound is the successor in interest to the land and wetland permit applications that are the subject of this appeal, having acquired its interest therein from The Preserve, LLC, through a foreclosure action that took place while this matter was on appeal before Judge Munro.

[3] That application was denied on March 18, 2006, and River Sound's appeal from that denial to the Superior Court was dismissed on February 19, 2008. River Sound appealed from that dismissal to this court, and we affirmed the dismissal in a separate opinion. *River Sound Development, LLC* v. *Inland Wetlands & Watercourses Commission*, 122 Conn. App. 644, 2 A.3d 928 (2010).

in that area included the construction of greens, tees, fairways and cart paths. The commission entertained River Sound's application at a February 17, 2000 public hearing and during several continuations thereof. During that time, the commission heard from experts on behalf of River Sound, as well as from its own consultants. In addition, abutting property owners also were heard from, which brought into focus a general concern that the proposed application of fertilizer and pesticides to the golf course could impact their groundwater supplies. On the basis of this information, the commission evaluated the application in light of the considerations set forth in § 10 of the inland wetlands and watercourses regulations of the town of Old Saybrook (Old Saybrook regulations) and in § 22a-41.

On July 11, 2000, the commission approved the application, subject to several conditions. The ninth provision of the fourth condition required River Sound to file a bond in the amount of $300,000 with the commission before it would be permitted to disperse any chemicals on its golf course. The bond was to remain in effect throughout the life of the golf course and, in the event the course should close, for at least five years thereafter. The stated purpose of this bond was to "insure full compliance with the . . . condition with regard to the full implementation of [River Sound's] Integrated Pest Management Plan" and to serve as "security for the payment of any and all damages and/or claims for damages by any person or property adversely affected by the activities of [River Sound] with respect to the Integrated Pest Management Plan."

The plaintiffs appealed to the Superior Court from the commission's approval, arguing that they had not received proper notice of the public hearing and that the commission's approval was impermissible because the bond requirement imposed an illegal condition as part of the approval. In her memorandum of decision

dated May 12, 2004, Judge Munro held that the plaintiffs had received proper notice but sustained the appeal on the ground that the bond condition was illegal. In support of its conclusion, the court held that the bond was illegal because (1) it was not a performance bond countenanced by Old Saybrook's wetland regulations and, therefore, was beyond the scope of the commission's authority, and (2) it did not, "by the terms of its language, protect the wetlands and watercourses." After concluding that the condition was illegal, the court next determined that the condition was integral to the application because the explicit language of the condition provided that failure to comply with its requirements would be grounds for revocation of the permit. Thus, because the court determined that the commission would not have granted the permit without the bond condition, it consequently held that it was without authority to excise that condition from the otherwise unobjectionable permit and remanded the matter "to the commission for further consideration in light of [that] decision."

River Sound filed a motion to open and to modify the court's judgment, which Judge Munro denied on July 14, 2004. Thereafter, pursuant to § 11.6 of the Old Saybrook regulations,[4] River Sound submitted an application to the commission on August 13, 2004, to modify its original application so as to conform it to the court's ruling without being required to file a new application that would require the entire process to start anew. The modified application removed the illegal bond condition previously included in provision nine of condition four and amended the language of the performance and

[4] Section 11.6 of the Old Saybrook regulations provides in relevant part: "If the Commission denies the permit, or if it grants the permit with terms, conditions, limitations or modifications, the applicant may attempt to modify the proposal to the Commission's satisfaction. The Commission shall determine whether the proposed modification requires the filing of a new application. . . ."

maintenance bond requirements set forth in condition eight to "assure the full implementation of [River Sound's] Integrated Pest Management Plan" and to "ensure the correction of any inadequacies or problems which may occur with respect to . . . implementation of the Integrated Pest Management Plan . . . ."

At its meeting on November 18, 2004, the commission considered the modified application to determine whether it should be approved or an entirely new application should be required. The focus of this inquiry centered on whether the illegal bond condition that had been removed from the original application was a sine qua non for approval of that application and whether the new provisions added in the modified application to ensure implementation of the integrated pest management plan were sufficient. In reaching their conclusion, the commission members reviewed in detail (1) the record concerning the original application, including the exhibits and the motion of the commission to approve that application, and (2) the details of the judgment rendered by Judge Munro. Additionally, the commission members participated in various discussions with counsel and each other to ensure that they were "sufficiently familiar with the facts of the original application, the original decision, and the [c]ourt [j]udgment to make a fully-informed vote on the [modified application]." The commission voted to approve the modified application on November 18, 2004.

On January 5, 2005, the plaintiffs appealed from the commission's approval of the modified permit to the Superior Court. The appeal was dismissed by the court, *Aurigemma, J.*, on February 19, 2008. In reaching her conclusion, Judge Aurigemma concluded that: (1) the commission had not violated Judge Munro's decision by deciding on remand that the impermissible bond condition in the original application was not integral to the overall application because Judge Munro had not

ruled that the bond was "substantively integral"; (2) the commission did not err in allowing commission members to vote on the modified application who were not members of the commission when it voted to approve the original application; and (3) the commission did not err in allowing a modified application to proceed without considering the factors enumerated in § 22a-41 both because those guideposts had been considered for the approval of the original application and because the commission's regulations expressly provide authority for it to approve modified permit applications. These appeals followed.

I

The plaintiffs' first two arguments are directly related to each other, and we address them contemporaneously. The gravamen of their argument is that Judge Aurigemma incorrectly concluded that the commission was free to eschew Judge Munro's holding that the bond condition in the original application could not be severed from that application, as it was the law of the case and was binding on both the commission and on Judge Aurigemma. We are not persuaded.

As an initial matter, we set forth the applicable standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *DeSena* v. *Waterbury*, 249 Conn. 63, 72–73, 731 A.2d 733 (1999); *Colliers, Dow & Condon, Inc.* v. *Schwartz*, 88 Conn. App. 445, 452, 871 A.2d 373 (2005). In this case, Judge Aurigemma drew

a conclusion of law in determining the impact on the parties of Judge Munro's determination that the bond condition was integral to the original application. Our review, therefore, is plenary.

The legal impact of Judge Munro's determination that the bond condition was integral to the original permit application is usefully informed by a brief review of our jurisprudence concerning the role of the courts in reviewing decisions by an administrative agency. "The administrative appeal is simply a review of whether the agency could have decided as it did, not a 'transfer of jurisdiction' to the court for its determination of a 'better' decision." T. Tondro, Connecticut Land Use Regulation (2d Ed. 1992) p. 592. Thus, while courts have taken care to avoid "judicial usurpation of the administrative functions of the authority"; (internal quotation marks omitted) *Thorne* v. *Zoning Commission,* 178 Conn. 198, 206, 423 A.2d 861 (1979); they, nevertheless, have invoked their authority in limited situations to decree the modification of an administrative agency decision with a view toward ending further litigation. See *Vaszauskas* v. *Zoning Board of Appeals,* 215 Conn. 58, 66, 574 A.2d 212 (1990); cf. *Levine* v. *Zoning Board of Appeals,* 124 Conn. 53, 59, 198 A. 173 (1938) ("[w]here the foundations sufficient to support a judgment are found to exist, a modification of the judgment rendered is proper with a view of ending the litigation"). Consequently, the guiding principle that is distilled from this body of precedent is the necessary distinction between what a *court* has authority to do in the interest of judicial economy, as opposed to those future decisions that it must leave to an agency to resolve out of respect for administrative deference.

In the context of a contested condition that a land use agency has imposed on a permit application, and which a court has determined to be illegal, a court is limited in the relief it can provide. "Although the

imposition of an unlawful condition does not necessarily render a zoning authority's entire decision illegal and inefficacious . . . where the void condition was an essential or integral component of the zoning authority's decision it cannot be upheld." (Citation omitted.) *DeBeradinis* v. *Zoning Commission*, 228 Conn. 187, 202–203, 635 A.2d 1220 (1994). Thus, if the court concludes that the unlawful condition is *not* integral, it can modify the application by excising the unlawful condition and uphold the remainder of the agency's decision. *Parish of St. Andrew's Church* v. *Zoning Board of Appeals*, 155 Conn. 350, 354–55, 232 A.2d 916 (1967) ("The imposition of a void condition, however, does not necessarily render the whole decision illegal and inefficacious. If the decision is otherwise supported by sufficient grounds as found by the board, a modification of the decision may be decreed with a view toward ending further litigation."); see *Langer* v. *Planning & Zoning Commission*, 163 Conn. 453, 313 A.2d 44 (1972). If, however, "an integral condition is invalid, then an otherwise valid [application] is also invalid." *Reid* v. *Zoning Board of Appeals*, 235 Conn. 850, 858, 670 A.2d 1271 (1996). Accordingly, the question of whether an illegal condition is integral to an application relates only to what type of relief the *court* can grant. It has no bearing on whether an administrative agency subsequently can excise the illegal condition and approve the remainder of the application.[5]

---

[5] Our understanding that the purpose of a court's determining whether a condition is integral is to serve as bulwark against judicial encroachment on administrative prerogative is further buttressed by the separate, although analogous, single conclusion of law doctrine. "That doctrine provides that when the action of an agency is overturned, and it appears as a matter of law that there is only one single conclusion that the [agency] could reasonably reach, the trial court can direct the agency to take the action on remand." (Internal quotation marks omitted.) *Newtown* v. *Keeney*, 234 Conn. 312, 321 n.4, 661 A.2d 589 (1995). Our Supreme Court has explained that "[i]n the absence of such circumstances . . . the court upon concluding that the action taken by the administrative agency was illegal, arbitrary or in abuse of its discretion should go no further than to sustain the appeal taken from

In this case, Judge Munro concluded that the bond condition set forth in provision nine of condition four of the original permit application was integral to the overall application. The impact of that decision was that the *court* was unable to sever the illegal condition to uphold the remainder of the application and instead was obligated to sustain the appeal to accord sufficient deference to the commission. Contrary to the plaintiffs' arguments,[6] that determination had no bearing on

its action. For the court to go further and direct what action should be taken by the zoning authority would be an impermissible judicial usurpation of the administrative functions of the authority." *Bogue* v. *Zoning Board of Appeals*, 165 Conn. 749, 753–54, 345 A.2d 9 (1974). In either situation— where a court has to determine whether a condition is integral or where a court has to determine whether an agency is left with a single path forward in light of its decision—the purpose of the rule is to accord proper deference to the administrative agency; it is not to further limit an administrative agency's options in complying with a court's ruling.

[6] The plaintiffs assert two arguments in this regard. The first argument is that the commission was barred from excising the bond condition because Judge Munro had concluded that it was integral and that conclusion was, therefore, the law of the case. The law of the case doctrine is the "well-recognized principle of law that the opinion of an *appellate court*, so far as it is applicable, establishes the law of the case upon a retrial, and is equally obligatory upon the parties to the action and upon the trial court. . . . The rule is that a determination once made will be treated as correct throughout all subsequent stages of the proceeding except when the question comes before a higher court . . . and applies both to remands for new trial . . . and to remands for articulation." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Daniels*, 209 Conn. 225, 237, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989). In this case, the plaintiffs' reliance on the law of the case doctrine is misplaced. Although the trial court may have performed an appellate type function when it reviewed the bond condition, Judge Munro's conclusion regarding the integrality of the bond provision stated a limit on what the court could do and not a limit on what the commission could do. Therefore, the law of the case doctrine is not applicable.

The second argument is that the commission's decision to remove the bond condition and to approve the modified application was an impermissible collateral attack on Judge Munro's integrality conclusion. In connection with the plaintiffs' collateral attack argument, it is likewise without merit. A collateral attack on a judgment is "an attempt to avoid, evade, or deny the force and effect of a judgment in an indirect manner and not in a direct proceeding as prescribed by law . . . ." 47 Am. Jur. 2d 332, Judgments

whether the commission could sever the unlawful condition and approve a modified application. Indeed, the plaintiffs' arguments to the contrary would frustrate the very purpose of the rule: instead of affording greater deference to the administrative agency, a rule that a court's integrality conclusion is binding on the agency, too, would be an "impermissible judicial usurpation of the administrative functions of the authority." (Internal quotation marks omitted.) *Thorne* v. *Zoning Commission*, supra, 178 Conn. 206. Accordingly, while Judge Munro's decision barred the commission from approving a modified application that retained the illegal bond condition, the commission was free to entertain a modified application that excised the illegal condition.

II

The plaintiffs next argue that Judge Aurigemma's decision impermissibly upheld the commission's approval of a modified application to engage in regulated activity in a wetland without first considering the factors articulated in § 22a-41.[7] Specifically, the plaintiffs aver that, although the commission held extensive

§ 744 (2006). In this case, the commission did not attempt to avoid the force of the judgment rendered by Judge Munro by eschewing a portion of that judgment, which implicated the court's authority to act and did not affect the authority of the commission to consider a modified application.

[7] General Statutes § 22a-41 (a) provides: "In carrying out the purposes and policies of sections 22a-36 to 22a-45a, inclusive, including matters relating to regulating, licensing and enforcing of the provisions thereof, the commissioner shall take into consideration all relevant facts and circumstances, including but not limited to:

"(1) The environmental impact of the proposed regulated activity on wetlands or watercourses;

"(2) The applicant's purpose for, and any feasible and prudent alternatives to, the proposed regulated activity which alternatives would cause less or no environmental impact to wetlands or watercourses;

"(3) The relationship between the short-term and long-term impacts of the proposed regulated activity on wetlands or watercourses and the maintenance and enhancement of long-term productivity of such wetlands or watercourses;

"(4) Irreversible and irretrievable loss of wetland or watercourse resources which would be caused by the proposed regulated activity, includ-

public hearings and considered the factors set forth in both § 22a-41 and in § 10.2 of the Old Saybrook regulations prior to approving the original application, the commission was obligated to undergo the same analysis during its review of the modified application. The defendants counter that because the commission had already considered the requisite factors in approving the original application and because General Statutes § 22a-42a (d) (1) only requires consideration of the factors enumerated in § 22a-41 when issuing a permit to conduct regulated activities and not when considering an application to modify one condition on a permit that was already approved, the commission was not required to go over the same ground it covered in approving the original application. We agree with the defendants.

We begin by noting the relevant standard of review. "The application of a statute to a particular set of facts is a question of law to which we apply a plenary standard of review." *In re T.K.*, 105 Conn. App. 502, 506, 939 A.2d 9, cert. denied, 286 Conn. 914, 945 A.2d 976 (2008). Similarly, "[a]s with any issue of statutory construction, the interpretation of a charter or municipal ordinance presents a question of law, over which our review is plenary." (Internal quotation marks omitted.)

ing the extent to which such activity would foreclose a future ability to protect, enhance or restore such resources, and any mitigation measures which may be considered as a condition of issuing a permit for such activity including, but not limited to, measures to (A) prevent or minimize pollution or other environmental damage, (B) maintain or enhance existing environmental quality, or (C) in the following order of priority: Restore, enhance and create productive wetland or watercourse resources;

"(5) The character and degree of injury to, or interference with, safety, health or the reasonable use of property which is caused or threatened by the proposed regulated activity; and

"(6) Impacts of the proposed regulated activity on wetlands or watercourses outside the area for which the activity is proposed and future activities associated with, or reasonably related to, the proposed regulated activity which are made inevitable by the proposed regulated activity and which may have an impact on wetlands or watercourses."

*Kelly* v. *New Haven*, 275 Conn. 580, 607, 881 A.2d 978 (2005). Accordingly, "we must decide whether [the trial court's] conclusions [of law] are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *DeSena* v. *Waterbury*, supra, 249 Conn. 73.

We also note the relevant statutes. Section 22a-42a (d) (1) provides in relevant part: "In granting, denying or limiting any permit for a regulated activity the inland wetlands agency, or its agent, shall consider the factors set forth in section 22a-41 . . . ." Moreover, § 10.2 of the Old Saybrook regulations provides additional factors to consider "[i]n carrying out the purposes and policies of sections 22a-36 to 22a-45, inclusive, of the Connecticut General Statutes . . . ." Finally, § 11.6 of the Old Saybrook regulations provides in relevant part: "If the Commission denies the permit, or if it grants a permit with terms, conditions, limitations or modifications, the applicant may attempt to modify the proposal to the Commission's satisfaction. The Commission shall determine whether the proposed modification requires the filing of a new application. . . ."

In this case, River Sound submitted a modified application that removed the illegal bond condition previously included in provision nine of condition four and amended the language of the performance bond requirement set forth in condition eight to "assure the full implementation of [River Sound's] Integrated Pest Management Plan" and to "ensure the correction of any inadequacies or problems which may occur with respect to . . . implementation of the Integrated Pest Management Plan . . . ." Thus, this modified application was not a permit to engage in new regulated activity and did not require the commission to reconsider the guideposts set forth in § 22a-41. See *Consolini* v. *Inland Wetlands Commission*, 29 Conn. App. 12, 16, 612 A.2d 803 (1992) (new permit application not required

because commission concluded revised plan fit within contours of permits already granted for that regulated activity); R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 24:11, p. 735 (new application to land use agency not necessary simply to "clarify a condition of approval imposed by the agency or to make minor changes to the approval or a condition which does not affect the agency's action"); cf. R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 35:1, p. 320 ("[w]here the appeal is sustained, it is the duty of the agency to proceed according to law even if not instructed how to proceed, which often involves reconsideration of the application without another public hearing"). Accordingly, we conclude that the commission was not required to reconsider the guidelines set forth in § 22a-41 or in § 10.2 of the Old Saybrook regulations because it was not considering an application for new regulated activity and the commission had authority pursuant to § 11.6 of the Old Saybrook regulations to approve the modified application without requiring a new application.

### III

Finally, the plaintiffs argue that Judge Aurigemma impermissibly upheld the commission's decision to allow new commission members to vote on the modified application without having attended the original hearings. Specifically, the plaintiffs aver that of the seven commission members who voted on the original application, only two of them were on the commission that approved the modified application and that these new members were informed insufficiently with respect to the original application to make an informed decision with respect to the modified application. We disagree.

Without citing a case dealing with a modified application before a wetlands commission, the plaintiffs rely on analogous case law for the general proposition that

"[i]t is a requisite of [an administrative hearing] that the board members making the decision consider and appraise the evidence." *Watson* v. *Howard*, 138 Conn. 464, 468, 86 A.2d 67 (1952). More specifically, the plaintiffs maintain that "[a] new commission member cannot vote on matters where the public hearing concluded before that commissioner was appointed," which they contend, cannot be ameliorated by commission members "acquainting himself sufficiently with the issues raised and the evidence and the arguments presented at the public hearing." *Loh* v. *Town Plan & Zoning Commission*, 161 Conn. 32, 42, 282 A.2d 894 (1971). That reading of our case law, however, is too narrow.[8] Our jurisprudence in this area teaches that "[t]he purpose of the public hearing is . . . to inform the members of the commission as to the reasons why the change should or should not be made. . . . Yet, occasions may arise where, because of illness or other inability, a member may be unable to attend the hearing. Such a member should not be prohibited from voting on a change provided he seek[s] to make and . . . [has] the means to make an informed decision, one that is based on knowledge sufficient for wise and proper judgment." (Citation omitted; internal quotation marks omitted.) Id., 41–42. Thus, the general principle relevant to our adjudication of the issue in this case[9] is that a

---

[8] Indeed, even the court in *Watson* explained that "[the board member absent from the public hearings] did not receive the benefit which the evidence and the arguments might have provided, nor did his subsequent efforts to acquaint himself with the facts overcome the handicap to which he was subjected. It appears that he did not examine all of the evidence presented to the other members." *Watson* v. *Howard*, supra, 138 Conn. 468. Far from announcing a bright line rule that a commissioner who was not a member of the commission at the time the relevant public hearings were held cannot participate in a subsequent vote on the application that was the subject of those hearings, the dicta in *Watson* suggests that commissioners nevertheless can familiarize themselves with the record and participate in related votes.

[9] We note that the case law cited by the plaintiffs related to the specific interpretation of General Statutes § 8-3. Accordingly, *Watson* and its progeny are not controlling of the issues here.

commission member needs to perform the due diligence necessary to make an informed decision on the specific issue before him or her. Accordingly, we conclude that the commission members who were not on the commission when the original application was approved were permitted to vote on the modified application, provided that they were sufficiently informed of issues to make a wise and proper judgment.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Although the plaintiffs argue on appeal that, in addition to their claim that the commission members were required to assess the modified application in light of § 22a-41, the information that the commission members did review was inadequate to make an informed decision, that issue was not addressed by Judge Aurigemma, and the plaintiffs did not seek an articulation from the court to resolve that issue. Consequently, we do not address that issue on appeal. See *Zahringer* v. *Zahringer*, 262 Conn. 360, 370, 815 A.2d 75 (2003) ("Our rules regarding the need to seek an articulation of the factual basis of the trial court's decision are well settled. It is the responsibility of the appellant to move for an articulation in order to clarify the basis of the trial court's decision should such clarification be necessary for effective appellate review of the issue on appeal. . . . It is, therefore, the responsibility of the appellant to move for an articulation or clarification of the record when the trial court has failed to state the basis of a decision." [Citations omitted.]).